EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|--------|--|
| | 2025 TSPR 88 |
| | 216 DPR ___ |
| Luis E. Carbone Rosario (TS-3,177) | |

Número del Caso: CP-2020-0001

Fecha: 5 de septiembre de 2025

Oficina del Procurador General:

     Lcda. Lorena Cortés Rivera
     Subprocuradora General

     Lcda. Mabel Sotomayor Hernández
     Subprocuradora General

     Lcdo. Omar Andino Figueroa
     Subprocurador General

     Lcda. Yaizamarie Lugo Fontánez
     Procuradora General Auxiliar

Representante Legal de la querellada:

     Lcdo. Carlos Dávila Vélez

Comisionado Especial:

     Hon. Erik J. Ramírez Nazario

Materia: Conducta Profesional – Suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría por infringir los Cánones 21 y 38 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Luis E. Carbone Rosario
      (TS-3,177)

CP-2020-0001

*PER CURIAM*

En San Juan, Puerto Rico, a 5 de septiembre de 2025.

En esta ocasión, intervenimos disciplinariamente con el Lcdo. Luis E. Carbone Rosario (licenciado Carbone Rosario) por infringir los Cánones 21 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Por los fundamentos que expondremos más adelante, decretamos la suspensión inmediata e indefinida del letrado de la práctica de la abogacía.

Veamos los hechos que motivan nuestra determinación.

**I.**

Por hechos ocurridos el 1 de noviembre de 2006, se inició una causa penal en contra del Sr. Waldemar Fernández Rodríguez por la muerte violenta de los

señores Edwin Quiñones Torres y Omar Berdecía Torres. Como parte del proceso, se presentó una solicitud de supresión de evidencia. El 9 de diciembre de 2011 este Tribunal emitió una *Opinión* en el caso Pueblo v. Fernández Rodríguez, 183 DPR 770 (2011), sobre la supresión de cierta evidencia en el contexto del privilegio abogado-cliente.

Como consecuencia de lo que allí trascendió y en lo pertinente a este proceso disciplinario, ordenamos a la Oficina del Procurador General (OPG) que investigara la conducta desplegada por el licenciado Carbone Rosario en calidad de representante legal del señor Fernández Rodríguez. Esto, tras determinar que del expediente judicial surgía que el licenciado Carbone Rosario divulgó información privilegiada de su cliente sin la debida autorización. Pueblo v. Fernández Rodríguez, *supra*, pág. 808. De manera específica, este Tribunal concluyó que el licenciado Carbone Rosario reveló la ubicación de un arma de fuego, un cargador y unas municiones utilizadas para cometer los delitos imputados al señor Fernández Rodríguez. Íd.

En cumplimiento con nuestra orden, el 29 de diciembre de 2011 la OPG remitió una misiva al licenciado Carbone Rosario mediante la cual le solicitó que expusiera su posición en cuanto a las imputaciones éticas en su contra y que brindara cualquier información o documentación que poseyera relacionada a las referidas imputaciones.[1] El 3 de febrero de 2012 el

---

[1] El 22 de abril de 2019 la Oficina del Procurador General (OPG) citó al Sr. Waldemar Fernández Rodríguez (señor Fernández Rodríguez) para ser entrevistado. El 7 de mayo de 2019 la representante legal del señor Fernández Rodríguez remitió una carta a la OPG mediante la cual informó que

licenciado Carbone Rosario presentó un *Memorándum* mediante el cual adujo que el Sgto. José Curbelo Muñiz (sargento Curbelo Muñiz) interrogó al señor Fernández Rodríguez de manera ilegal, por lo que sostuvo que su cliente fue interrogado a sus espaldas a pesar del agente conocer que él era su abogado y que el señor Fernández Rodríguez había manifestado que no declararía. En síntesis, el licenciado Carbone Rosario manifestó que el sargento Curbelo Muñiz violó los derechos constitucionales del señor Fernández Rodríguez.[2]

Además de contar con la comparecencia del licenciado Carbone Rosario, la OPG entrevistó a la Fiscal Jennifer Reyes Martínez, quien representó al Ministerio Público en el juicio contra el señor Fernández Rodríguez, y a la Lcda. Dalisa Ortiz Claudio (agente Ortiz Claudio), quien fue una de las agentes que se encontraba en la escena y a quien se alegó que el licenciado Carbone Rosario dirigió a la localización del arma y las municiones.

Asimismo, la OPG examinó las transcripciones de la *Vista de causa para arresto* y de la *Vista preliminar*, de las cuales

---

este no comparecería ante la referida oficina. Fundamentó su decisión en que no había presentado queja o reclamación civil alguna y en que no tenía interés de participar en el proceso disciplinario.

[2] En apoyo a su contención el Lcdo. Luis E. Carbone Rosario (licenciado Carbone Rosario) anejó a su *Memorándum* los siguientes documentos: (1) declaración jurada del Lcdo. Luis E. Carbone Rosario; (2) declaración jurada del Lcdo. Ovidio Zayas Pérez (licenciado Zayas Pérez), quien acudió al cuartel en calidad de amigo del señor Fernández Rodríguez; (3) copia de la declaración jurada suscrita por la Sra. Hugette Quintana Arroyo; (4) copia del certificado emitido por la Conferencia Latinoamericana de Comunidades Terapéuticas; (5) copia de proclama emitida por el Ayuntamiento del Municipio de La Vega en República Dominicana; (6) copia del croquis levantado que refleja la propiedad en donde ocurrieron los hechos; (7) DVD de la propiedad en que ocurrieron los hechos; (8) transcripción de la vista de causa probable para arresto celebrada el 3 de enero de 2007; (9) transcripción de la vista preliminar celebrada en los días 25 de marzo, 27 de junio y 28 de agosto de 2007; (10) transcripción de la vista preliminar celebrada en los días 25 y 29 de octubre de 2007, y (11) transcripción de la vista celebrada en los días 29 de octubre de 2007 y 7 de mayo de 2008.

surge el testimonio del sargento Curbelo Muñiz y de la agente Ortiz Claudio. En específico, el sargento Curbelo Muñiz testificó que el día de los hechos el señor Fernández Rodríguez acudió al cuartel en compañía del licenciado Carbone Rosario, quien se identificó como su representante legal. Sostuvo que el licenciado Carbone Rosario le indicó que venía a entregar al señor Fernández Rodríguez "con relación a unos hechos de sangre",[3] pero que este no iba a declarar porque no estaba en condiciones en esos momentos.[4] El sargento Curbelo Muñiz explicó que le preguntó al licenciado Carbone Rosario sobre la ubicación del arma que utilizó el señor Fernández Rodríguez para cometer el delito y que este le "manifestó que se encontraba en una jardinera en el lugar de los hechos".[5]

El sargento Curbelo Muñiz indicó que procedió a llamar a la agente Ortiz Claudio y que el licenciado Carbone Rosario le explicó a esta "dónde se encontraba el arma en la jardinera".[6] Este sostuvo que luego de encontrar el arma en el lugar que indicó el licenciado Carbone Rosario, la agente Ortiz Claudio lo llamó, ya que no encontró el cargador ni las municiones y que, ante esto, el licenciado Carbone Rosario le expresó a la agente que debía buscar bien en la jardinera porque "todas las cosas est[aban] allí".[7] El sargento Curbelo Muñiz indicó que, momentos luego, la agente Ortiz Claudio lo llamó y le comunicó que "habían encontrado todas las cosas".[8]

---

[3] *Transcripción de la Vista de causa para arresto*, pág. 20. Véase, además: *Transcripción de la Vista preliminar*, pág. 12.
[4] Íd.
[5] Íd., pág. 21. Véase, además: *Transcripción de la vista preliminar*, pág.12.
[6] Íd. Véase, además: *Transcripción de la vista preliminar*, pág. 12.
[7] Íd. pág. 22. Véase, además: *Transcripción de la vista preliminar*, pág.14.
[8] Íd.

Por su parte, la agente Ortiz Claudio declaró que se encontraba en la escena y que el sargento Curbelo Ortiz la llamó a su celular e indicó que el licenciado Carbone Rosario le explicó dónde estaba la evidencia:

> Agente Ortiz Claudio: "Pues, eh, recibo la llamada del [s]argento Curbelo, eh, me indica que al cuartel general se había personado un sospechoso con su abogado…"
>
> Fiscal Jennifer Reyes: "¿Dónde usted recibió esa llamada?"
>
> Agente Ortiz Claudio: "En mi celular".
>
> Fiscal Jennifer Reyes: "Okey."
>
> Agente Ortiz Claudio: "Entonces me, me indica que verifique en la jardinera de la casa, este, porque allí se encontraba el arma de fuego".
>
> Fiscal Jennifer Reyes: "¿Quién le pide que verifique en la jardinera?"
>
> Agente Ortiz Claudio: "Eh, el, el sargento".
>
> Fiscal Jennifer Reyes: "Okey"
>
> Agente Ortiz Claudio: "Voy y hago, verific[o], eh, le indico que de verdad no encuentr[o] nada, eh, no, no, no veía nada por toda esa área entonces él procede a comunicarme con el abogado".
>
> Fiscal Jennifer Reyes: "¿Qué abogado?"
>
> Agente Ortiz Claudio: "Eh, Carbone. Cuando yo tomo el teléfono, pues, le pregunto con quién habl[o] y me indica el Lcdo. Carbone. Eh, entonces él procede a explicarme; de la manera que me explicaba tampoco, yo estaba buscando en la misma área que indicaba que era la casa. Seguimos en la búsqueda y no se encuentra. Ahí estaba el Teniente Melquiades Álvarez conmigo, y entonces es Melquiades quien habla con el, con el, con el abogado".
>
> Fiscal Jennifer Reyes: "Okey. [Q]u[e] usted viera, [¿]qué sucedió luego que el teniente, el capitán hoy, tomó el teléfono?
>
> Agente Ortiz Claudio: "Pues, proseguimos haciendo la búsqueda, eh, seguimos para la parte trasera de la casa, hay otra, hay una propiedad al lado derecho, veo que él entra hacia esa propiedad, atravesamos esa propiedad y nos encontramos que salimos a otra urbanización".
>
> Fiscal Jennifer Reyes: "Ajá".
>
> Agente Ortiz Claudio: "Y entonces ahí sí, estaba una jardinera, se procede a hacer la búsqueda y ahí es donde aparece el arma de fuego".[9]

---

[9] *Transcripción de vistas,* págs. 57-58.

El 3 de julio de 2019 la OPG presentó su *Informe*.[10] En este, determinó que existía controversia sobre si el licenciado Carbone Rosario reveló información privilegiada al sargento Curbelo Muñiz, lo cual constituiría una violación a los Cánones 21 y 38 de Ética Profesional, *infra*. Esto dado que, a pesar de que los testimonios del sargento Curbelo Muñiz y la agente Ortiz Claudio eran consistentes entre sí, el señor Fernández Rodríguez se negó a participar del proceso y el licenciado Carbone Rosario negó haber provisto información privilegiada. Asimismo, el Lcdo. Ovidio Zayas Pérez (licenciado Zayas Pérez), quien compareció al cuartel general el día de los hechos en calidad de amigo del señor Fernández Rodríguez, afirmó mediante *Declaración jurada* que acompañó en todo momento al licenciado Carbone Rosario en el cuartel, que no escuchó a este brindar la referida información al sargento Curbelo Muñiz y que tampoco escuchó al señor Fernández Rodríguez informarles sobre la ubicación del arma de fuego. En consecuencia, la OPG recomendó el nombramiento de un Comisionado Especial que dirimiera la controversia de credibilidad.

El 26 de julio de 2019 el licenciado Carbone Rosario presentó su *Réplica a informe del Procurador General y Solicitud de desestimación*. Solicitó que no acogiéramos la recomendación de la OPG, ya que el señor Fernández Rodríguez no presentó queja en su contra y era este el titular del

---

[10] El 29 de marzo de 2012 la OPG recomendó la paralización del procedimiento disciplinario hasta la culminación del caso <u>Pueblo v. Fernández Rodríguez</u>, 183 DPR 770 (2011), modificado en reconsideración por el caso <u>Pueblo v. Fernández Rodríguez</u>, 188 DPR 165 (2013). El referido petitorio fue concedido el 13 de abril de 2012.

privilegio. Asimismo, adujo que el proceso disciplinario no debía prosperar porque la OPG no contaba con prueba clara, robusta y convincente.

El 25 de octubre de 2019 este Tribunal emitió una *Resolución* mediante la cual ordenó a la OPG que presentara la querella correspondiente. A esos efectos, el 15 de enero de 2020 la OPG presentó una *Querella* contra el licenciado Carbone Rosario mediante la cual le imputó la violación de los Cánones 21 y 38 de Ética Profesional, *supra*.

El 20 de febrero de 2020 el licenciado Carbone Rosario presentó su *Contestación a la querella*. En esta, indicó que el señor Fernández Rodríguez nunca le comunicó la ubicación del arma de fuego, las municiones y el cargador. A raíz de esto, el licenciado Carbone Rosario negó haber comunicado a las autoridades la ubicación de los referidos objetos. En consecuencia, arguyó que la *Querella* se fundamentó en hechos falsos y solicitó su archivo. El 30 de junio de 2020 emitimos una *Resolución* mediante la cual denegamos la solicitud del licenciado Carbone Rosario y ordenamos a la Secretaría de este Tribunal que continuara con el trámite ordinario de la *Querella*.

El 3 de abril de 2023 nombramos al Lcdo. Erik Ramírez Nazario, exjuez del Tribunal de Apelaciones, como Comisionado Especial **para recibir la prueba** y rendir un *Informe* con las determinaciones de hechos y recomendaciones que estimara pertinentes. Tras varios trámites procesales, los cuales incluyeron varias vistas y el intercambio de prueba de ambas

partes, el 24 y 25 de octubre de 2023 se celebró la *Vista en su Fondo*. A esta comparecieron el licenciado Carbone Rosario y su representante legal, el Lcdo. Carlos S. Dávila Vélez. La OPG estuvo representada por la Lcda. Yaizamarie Lugo Fontánez. Posteriormente, el 28 de mayo de 2024 el Comisionado Especial presentó el *Informe del Comisionado Especial*, del cual se desprende que encontró probados veintiocho hechos:

(1)     El 1 de noviembre de 2006 ocurrieron unos hechos en la calle Guadalcanal, de la barriada Venezuela, Río Piedras, en la que fallecieron el señor Edwin Quiñones Torres y el señor Omar Berdecía Torres.

(2)     El licenciado […] Zayas Pérez recibió una llamada en la que se le informó sobre una situación surgida en la residencia del señor Fernando Fernández. Acudió a la barriada Venezuela donde ubica la residencia de Fernando Fernández y allí pudo observar los cuerpos de las dos personas muertas, a quienes conocía porque habían sido sus clientes. Luego de esto, se retiró del lugar debido a que llegaron los policías investigadores y recibió una llamada pidiéndole que acudiera al restaurante Café Valencia en Río Piedras.

(3)     En el Café Valencia estuvieron reunidos, de 30 a 45 minutos, el licenciado Zayas Pérez, el señor Fernández Rodríguez y [el licenciado Carbone Rosario]. Además, estuvo presente el señor Fernando Fernández.

(4)     Luego de conversar, se trasladaron al Cuartel General de la Policía de Puerto Rico, con el propósito de entregar al señor Fernández Rodríguez. Este último viajó en el vehículo con el licenciado Carbone [Rosario] y el licenciado Zayas Pérez viaj[ó] en su carro aparte.

(5)     El licenciado Zayas Pérez acompañó al señor Fernández Rodríguez como amigo, en apoyo, no podía representarlo legalmente por conflicto de interés. **El licenciado Carbone Rosario compareció como su representante legal.**

(6)     En la División de Homicidios, luego de una espera, los recibió el […] sargento […] Curbelo Muñiz […], [S]upervisor de la División de Homicidios de San Juan, qui[e]n preguntó al licenciado Carbone [Rosario] sobre el propósito de su visita. En ese momento, indicaron que venían a entregar al señor Fernández Rodríguez, en relación con unos hechos ocurridos en la barriada Venezuela, Río Piedras, Puerto Rico. **El licenciado Carbone [Rosario] indicó al sargento Curbelo [Muñiz] qu[e] su cliente no iba a declarar porque no estaba en condiciones, estaba nervioso, pero que posteriormente declararía.**

(7)     El sargento Curbelo Muñiz pasó a su oficina con el licenciado Carbone [Rosario] y el señor Fernández Rodríguez. **En este momento el licenciado Zayas Pérez permaneció fuera de la oficina del agente. Este no fungió como abogado y no estuvo en todo momento con el licenciado Carbone [Rosario]. El**

[sargento] Curbelo [Muñiz] habló con el licenciado Carbone [Rosario] en ausencia del licenciado Zayas Pérez.

(8) **En su oficina, el sargento Curbelo [Muñiz] leyó las advertencias de ley al señor Fernández Rodríguez y el licenciado Carbon[e] [Rosario] reiter[ó] que su cliente no prestaría una declaración en ese momento. El cliente se encontraba nervioso, lloroso y con los ojos aguados. Luego de esto, el sargento Curbelo [Muñiz] sacó al señor Fernández Rodríguez de la oficina y lo coloc[ó] bajo custodia de otros agentes como medida de seguridad.**

(9) Estando en su oficina dialogando con el licenciado Carbone [Rosario] sobre gestiones previas profesionales de este, **el sargento Curbelo [Muñiz] le preguntó sobre el arma de fuego que utilizó su cliente para cometer los hechos. El licenciado Carbone [Rosario] contestó que estaba en una jardinera cerca del lugar de los hechos.**

(10) Ante esta información, el sargento Curbelo [Muñiz] llamó a la agente Ortiz Claudio, a qui[e]n supervisaba y se encontraba investigando la escena de los hechos, para transmitirle lo que el [licenciado Carbone Rosario] le había informado sobre la ubicación del arma.

(11) Para localizar el arma, luego de una búsqueda inicial infructuosa, el sargento Curbelo [Muñiz] recibió otra llamada de la agente Ortiz Claudio [en la que] esta le indic[ó] que no habían encontrado nada. Entonces le pasó la llamada telefónica al licenciado Carbone [Rosario] para que le explicara directamente a ella. El sargento Curbelo [Muñiz] permaneció al lado del licenciado Carbone [Rosario] y escuchó cuando este le indicaba a la agente Ortiz Claudio que continuaran buscando que estaban allí, y explicaba a la agente c[ó]mo llegar a la jardinera donde ubica[b]a el arma, el magacín o cargador y las municiones. Finalmente, luego de estas explicaciones adicionales se obtuvo la evidencia buscada.

(12) La agente Ortiz Claudio declaró que la persona con quien habló al teléfono celular, quien le dio instrucciones para encontrar el arma, se le identificó como el licenciado Carbone [Rosario].

(13) De la investigación correspondiente surgió que el arma encontrada estaba registrada a nombre del señor Fernández Rodríguez.

(14) Luego de encontradas las armas el sargento Curbelo [Muñiz] indicó al licenciado Carbone [Rosario] que iba a presentar cargos contra su cliente.

(15) **Ese día el 1 de noviembre de 2006, el licenciado Carbone [Rosario] también habló con el sargento Curbelo [Muñiz] de unas alegadas extorsiones de las que había sido objeto su cliente. Al solicitar evidencias sobre esto, el licenciado Carbone [Rosario] expresó que no tenía consigo evidencia de ello.**

(16) El día 1 de noviembre de 2006, el señor Fern[á]ndez Rodríguez no declaró en ningún momento. El sargento Curbelo [Muñiz] no lo entrevist[ó] a solas, en ausencia de su abogado, ni obtuvo información adicional alguna de este.

(17) El sargento Curbelo [Muñiz] declaró en la [*Vista de causa para arresto* que se celebró el 3 de enero de 2007] y reiteró

que la información sobre el arma de fuego, el cargador y las municiones la obtuvo por información que le fuera brindada por el licenciado Carbon[e] [Rosario]. El sargento Curbelo [Muñiz] declaró sobre la comunicación telefónica con la agente Ortiz Claudio quien fue llamada para comunicarle de dicha información mientras se encontraba en la escena del crimen y a base de la cual se encontró el arma.

(18) **El sargento Curbelo Muñiz estableció que en ese momento la defensa del señor Fernández Rodríguez, de la cual el licenciado Carbone [Rosario] formaba parte, no cuestionó su testimonio ni efectuó planteamiento legal alguno sobre [la] ilegalidad de lo declarado por él, ni sobre la forma y manera en que se adquirió la posesión del arma [,] las municiones y el cargador.**

(19) **En dicha vista los abogados del señor Fernández Rodríguez,** esbozaron otros argumentos sobre elementos de intención, asesinato atenuado **y expresaron que su cliente se entregó y entregó el arma a través de su abogado.**

(20) En la vista preliminar celebrada el 25 y [el] 29 de octubre de 2007 nuevamente declaró el sargento Curbelo [Muñiz] y la agente Ortiz Claudio. Repitieron su declaración sobre c[ó]mo obtuvieron la información del licenciado Carbone [Rosario] para poder encontrar el arma de fuego, las municiones y el cargador. **Entonces la defensa argumentó que se había violado el privilegio abogado cliente y procedieron a solicitar la supresión de la evidencia obtenida.**

(21) Mediante [una] *Resolución* del 9 de mayo de 2008, surge del expediente judicial que **el Tribunal de Primera Instancia expresó que el testimonio de los licenciados Carbone [Rosario] y Zayas Pérez no le mereció credibilidad por las inconsistencias entre sí.** En dicha *Resolución* se expresó "que en efecto la comunicación sobre la localización del arma y las municiones se dio y se dio porque la intención de ir al cuartel era para entregar al [señor Fernández Rodríguez]".

(22) El 9 de julio de 2008, el señor Fernández Rodríguez presentó una *Moci[ó]n de Desestimación al amparo de la Regla 64(p) de las de Procedimiento Criminal.* En esta aleg[ó] que la determinación de causa probable para acusar efectuada por el [T]ribunal era contraria a derecho, **toda vez que la prueba presentada en la vista preliminar celebrada era producto de un testimonio inadmisible e ilegal, por ser producto de información privilegiada confiada a su abogado en la relación de abogado y cliente. Así, arguyó que la prueba presentada "constituía producto de materia privilegiada por tratarse de una comunicación habida entre abogado y cliente, cuyo privilegio no había sido renunciado por el tenedor del derecho". Aseveró que "el testimonio del sargento Curbelo Muñiz como toda la evidencia recopilada en el caso", "son inadmisibles por ser producto de unas violaciones crasas a los derechos constitucionales del imputado, los derechos estatutarios (privilegios) y el debido procedimiento de ley". Alegó además que "la única prueba presentada por el Ministerio P[ú]blico que le vincula con los hechos imputados "es producto de la información privilegiada habida entre [e]ste y su abogado, al no haberse renunciado al carácter privilegiado de la comunicación, el testimonio producto de dicha información es inadmisible, por ende, la determinación de causa fue contraria a derecho".**

(23) En su *Memorándum de Derecho en Cumplimiento de Orden* presentado el 14 de noviembre de 2008, el señor Fernández Rodríguez solicitó que se resolviera que la determinación de causa para acusar fue contraria a derecho. Así, **argumentó que en la vista preliminar quedó claramente establecido que el arma de fuego ocupada como consecuencia del testimonio ofrecido al sargento Curbelo [Muñiz] por el licenciado Carbone [Rosario] no es admisible por estar investido del privilegio que goza[n] las conversaciones habidas entre abogado y cliente**. Arguyó que "quien único podía despojar de dicho privilegio en su comunicación era nuestro representado que en momento alguno se renunció a dicho derecho". Expresó, además, "que el Pueblo de Puerto Rico no contaba con otra evidencia que no fuese la declaración del abogado producto de la comunicación que su cliente le ofreció y punto". Añadió "que toda la evidencia que se ocupó se hizo con posterioridad a las manifestaciones que le hiciese el [licenciado] Carbone [Rosario]" al sargento Curbelo [Muñiz].

(24) De la *Resolución* emitida el 29 de diciembre de 2009 el señor Fernández Rodríguez recurrió al Tribunal de Apelaciones, caso número KLCE2009-0116. Este foro apelativo confirmó al foro primario mediante [una] *Sentencia* de 22 de mayo de 2009. Inconforme con esta determinación el señor Fernández Rodríguez solicitó reconsideración a dicha *Sentencia*. Alegó que "no existe prueba alguna" de que él "hubiera autorizado [a]l abogado a hacer ningún tipo de expresión con relación a los hechos bajo investigación". Continuó enfatizando que "no existen testigos presenciales de los hechos ni prueba que vinculara directa o circunstancialmente al peticionario con los hechos imputados. La única prueba que lo vincula eran las expresiones obtenidas del abogado sin que el peticionario hubiera renunciado al privilegio abogado [-] cliente y sin que lo hubiera autorizado a ofrecer información alguna".

(25) Denegada la solicitud de reconsideración [,] el señor Fernández Rodríguez acudió al Tribunal Supremo mediante [un] recurso de *certiorari*, Caso núm. CC-2009-0622.

(26) El Tribunal Supremo expidió el recurso y, mediante [una] *Opinión* de 9 de diciembre de 2011, determinó que procedía la supresión del arma de fuego, el cargador y las municiones ocupadas. Surge de dicha *Opinión* que dicho foro refirió al [licenciado Carbone Rosario] a la OPG para que se investigara su conducta profesional. **En lo pertinente expresó dicho foro lo siguiente: "No tenemos duda alguna [que] entre el peticionario Fernández Rodríguez y el licenciado Carbone [Rosario] existió una relación abogado cliente. Los documentos contenidos en el expediente judicial, así como las transcripciones del sargento Curbelo [Muñiz] y del propio licenciado Carbone [Rosario], revelan que durante el transcurso de esta relación fiduciaria el señor Fernández Rodríguez le confió al licenciado Carbone [Rosario] la información relacionada con la comisión de los actos delictivos imputados".**

(27) De la prueba documental admitida y considerada por el [Comisionado Especial], no se desprende que el señor Fernández Rodríguez hubiese alegado que la información sobre las armas se obtuviera de otra manera que no fuere a través de la información brindada por el [licenciado Carbone Rosario] al sargento Curbelo [Muñiz].

(28) De la prueba desfilada no surge que contra el sargento Curbelo [Muñiz] se hubiere presentado alguna queja administrativa por

su conducta en el manejo del caso. Tampoco se señaló que en algún momento o alguna vista se le hubiere cuestionado o increpado por haber interrogado indebida o ilegalmente al señor Fernández Rodríguez el 1 de noviembre de 2006.[11] (Negrilla suplida).

Tras dirimir la prueba, el Comisionado Especial concluyó que existía evidencia clara, robusta y convincente que demostraba que el licenciado Carbone Rosario divulgó, sin autorización del señor Fernández Rodríguez, información privilegiada al sargento Curbelo Muñiz, la cual le permitió a este obtener el arma, el cargador y las municiones. Específicamente encontró que los testimonios del licenciado Carbone Rosario y del licenciado Zayas Pérez no les merecía credibilidad. Esto, pues sus testimonios estaban en abierta contradicción con la evidencia que obraba en el expediente, no solo testimonial sino ante la abundante documentación sometida como parte del proceso penal génesis de este proceso. En consecuencia, el Comisionado Especial concluyó que el licenciado Carbone Rosario violó los Cánones 21 y 38 de Ética Profesional, *supra*.

## II.

### A.   Cánones de Ética Profesional

#### a. Canon 21

La relación abogado-cliente es sui géneris; es de naturaleza fiduciaria y está basada en la honestidad, la lealtad y la fidelidad absoluta. In re Reyes Coreano, 190 DPR 739, 753-754 (2014); In re Pérez Rodríguez, 172 DPR 665, 671-672 (2007). Esto se debe a las inexorables exigencias éticas

---

[11] *Informe del Comisionado Especial*, págs. 11-16.

particulares de la profesión legal. Íd. A esos efectos, el Canon 21 de Ética Profesional establece, en lo pertinente, los pormenores de este deber:

> **El abogado tiene para con su cliente un deber de lealtad completa.** Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.
>
> .    .    .    .    .    .    .    .
>
> **La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación.** Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. **Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.** (Negrilla suplida). 4 LPRA Ap. IX.

El privilegio abogado-cliente pretende salvaguardar la relación fiduciaria entre las partes, ya que revelar las confidencias del cliente constituye no solo un acto de traición, sino que viola el deber de lealtad del abogado. In re Pérez Rodríguez, *supra*, pág. 670; In re Rochet Santoro, 174 DPR 123, 134 (2008); In re Bauzá Torres, 171 DPR 894, 905-907 (2007); In re Palou Bosch, 148 DPR 717, 727 (1999). En atención a esto, el Canon 21 le impone al abogado dos obligaciones principales: (1) la obligación de ejercer un criterio profesional independiente en defensa de los intereses del cliente y (2) la obligación de no divulgar los secretos y las confidencias que el cliente haya compartido en el transcurso de su representación. In re Palou Bosch, *supra*, pág. 794. De esta forma, el abogado o la abogada tiene el deber de guardar

todas las confidencias que recibe de su cliente. S. Steidel Figueroa, *Ética y responsabilidad disciplinaria del abogado*, San Juan, Pubs. JTS, 2010, pág. 176.

Hemos expresado que "cuando un abogado divulga información confidencial sin la autorización previa de su cliente, incurre en una de las faltas éticas de mayor gravedad; particularmente en contra de los deberes de lealtad y confidencialidad que debe honrarles a sus clientes". Pueblo v. Fernández Rodríguez, *supra*, pág. 795. Si la información divulgada en violación de este deber incrimina penalmente al cliente, el abogado o la abogada, además de incurrir en conducta impropia, viola el derecho a la no autoincriminación de su cliente. Íd. No obstante, si el cliente renuncia a su derecho a no autoincriminarse y a su privilegio, el abogado o la abogada no habrá incurrido en conducta impropia. Íd.

### b. Canon 38

El Canon 38 del Código de Ética Profesional, *supra*, establece el deber de todo abogado o abogada de exaltar el honor y la dignidad de su profesión, y de evitar la apariencia de conducta profesional impropia. La apariencia de conducta impropia "lacera la imagen, la confianza y el respeto que nuestra sociedad deposita en la profesión y en las instituciones de la justicia". In re Otero, Pacheco, 200 DPR 561, 577 (2018); In re Guemárez Santiago, 191 DPR 611, 620 (2014). Así, un abogado o una abogada debe regirse conforme a los más altos postulados éticos. In re Rádinson Pérez *et al.*, 204 DPR 522, 542 (2020); In re Rivera Rodríguez, 202 DPR 1026,

1053 (2019). Ello, se debe a que nuestra profesión tiene un gran impacto en la vida y en la propiedad de otras personas. Íd. A la luz de esto la clase togada debe —y tiene que— conducirse con dignidad y honor en el ejercicio de sus funciones profesionales. Canon 38 del Código de Ética Profesional, *supra*.

**III.**

Antes de analizar los hechos esbozados en el contexto de la normativa ético-disciplinaria, corresponde que recapitulemos nuestra determinación en el caso Pueblo v. Fernández Rodríguez, *supra*. El 9 de diciembre de 2011 emitimos una Opinión en el caso de referencia, en la que resolvimos que toda información ofrecida a un agente del orden público por el abogado o la abogada de una persona que lo vincula con conducta delictiva, sin que esa persona haya renunciado al privilegio abogado-cliente, constituye materia privilegiada inadmisible en evidencia.

De manera particular, encontramos que el señor Fernández Rodríguez no renunció al privilegio abogado-cliente del cual era poseedor. En esa ocasión, explicamos que el expediente judicial sostenía que "al llegar al Cuartel General, el licenciado Carbone [Rosario] expresó que el señor Fernández Rodríguez **no emitiría declaración alguna sobre los hechos acontecidos porque se encontraba muy nervioso, pero que posteriormente sí lo haría**". (Negrilla suplida). Íd., pág. 803. Asimismo, enfatizamos que el señor Fernández Rodríguez conocía de su derecho a la no autoincriminación:

> [E]n el momento preciso en que el licenciado Carbone [Rosario] le divulgó la información privilegiada al sargento Curbelo ya se le habían leído las advertencias al señor Fernández Rodríguez y este se encontraba en otro lugar; o sea, en una celda bajo la custodia de otros agentes del orden público. Íd.

Así, respecto al aspecto probatorio-procesal, concluimos que el licenciado Carbone Rosario violó el privilegio abogado-cliente al divulgar la ubicación del cargador, del arma y de las municiones sin la debida autorización del señor Fernández Rodríguez. En cuanto al aspecto ético-disciplinario, concluimos que la divulgación constituía un "quebrantamiento de los deberes de lealtad y confidencialidad impuestos por el Canon 21 del Código de Ética Profesional, *supra*". Íd., pág. 808. En consecuencia, ordenamos a la OPG que investigara la conducta del licenciado Carbone Rosario como representante legal del señor Fernández Rodríguez y que iniciara el procedimiento disciplinario correspondiente. Íd., págs. 808-809.

Posteriormente, el 1 de marzo de 2013 reconsideramos nuestra posición con el único efecto de establecer que la doctrina del "fruto del árbol ponzoñoso" no se extendía para suprimir evidencia real obtenida como producto de una violación al privilegio abogado-cliente. Pueblo v. Fernández Rodríguez, 188 DPR 165 (2013). Nuestra determinación y el referido ético-disciplinario quedó inalterado.

Establecida nuestra determinación en el caso criminal, también precisamos recordar que, durante el proceso disciplinario, este Tribunal descartó archivar la presente causa por razón de que el cliente no fue quien promovió la causa disciplinaria. Con estos particulares de trasfondo y

expuesta la normativa ética pertinente, pasamos a analizar, a la luz de la prueba admitida y dirimida en este proceso, si el licenciado Carbone Rosario violó los Cánones 21 y 38 del Código de Ética Profesional, *supra*, y de haberlos violado, qué sanción corresponde. Veamos.

No existe controversia sobre que el licenciado Carbone Rosario era el representante legal del señor Fernández Rodríguez. De esta forma, entre ambos se configuró una relación abogado-cliente. Como explicamos anteriormente, esta relación de naturaleza fiduciaria le impone a las abogadas y a los abogados una serie de deberes y obligaciones respecto a sus clientes. Entre estas se encuentra la obligación de no divulgar los secretos y las confidencias que su cliente haya compartido en el transcurso de la representación. Canon 21, 4 LPRA Ap. IX.

En el presente caso, el licenciado Carbone Rosario niega haber revelado a las autoridades la ubicación del arma, el cargador y las municiones objeto del delito imputado a su cliente, el señor Fernández Rodríguez. De hecho, este asevera que tiene que haber sido el propio señor Fernández Rodríguez quien lo divulgara en alguna entrevista que le realizaran en contravención a sus derechos. No obstante, en todos los escritos presentados ante el Tribunal en el caso Pueblo v. Fernández Rodríguez, *supra*, el señor Fernández Rodríguez arguyó que correspondía la supresión de la referida evidencia, no por razón de un interrogatorio inconstitucional, sino porque eran producto de una manifestación indebida del licenciado Carbone Rosario al sargento Curbelo Ortiz y a la agente Ortiz Claudio,

en violación del privilegio abogado-cliente. Precisamente por esta contención, el foro de instancia descalificó al licenciado Carbone Rosario como representante legal del señor Fernández Rodríguez y lo citó para que compareciera como testigo en la vista de supresión de evidencia. Pueblo v. Fernández Rodríguez, *supra*, pág. 780.

En atención a lo anterior, el Comisionado Especial, en su Informe, determinó como hecho incontrovertido que el señor Fernández Rodríguez no fue quien reveló a las autoridades la ubicación del arma, del cargador y de las municiones. Para ello, destacó que el licenciado Carbone Rosario nunca alegó en escrito alguno que su cliente hubiera sido objeto de un interrogatorio ilegal y que se hubiera obtenido alguna evidencia como consecuencia de tal acto o por confesión; **la primera vez que surgió la referida alegación fue adelantado el trámite disciplinario que nos ocupa.**

En sus solicitudes de supresión de evidencia, el señor Fernández Rodríguez sostuvo, de manera consistente, que el licenciado Carbone Rosario infringió el privilegio abogado-cliente y divulgó a las autoridades la ubicación de la prueba incriminatoria. A esto se le suma la inconsistencia entre las declaraciones de los licenciados Carbone Rosario y Zayas Pérez, y lo que el Comisionado Especial determinó fueron las consistencias en los testimonios de los agentes del orden público.

El testimonio que proveyó el licenciado Zayas Pérez en la *Vista en su Fondo* de esta *Querella* está en abierta

contradicción con su *Declaración Jurada* del 2 de julio de 2012. En la *Declaración Jurada*, el licenciado Zayas Pérez expresó que, el día de los hechos, estuvo en todo momento con el licenciado Carbone Rosario y nunca escuchó que este suministrara información sobre el arma, el cargador y las municiones al sargento Curbelo Muñiz.[12] Sin embargo, en la *Vista en su Fondo* declaró que esto no había sido así, sino que hubo momentos en los que el licenciado Carbone Rosario estuvo con el sargento Curbelo Muñiz sin su presencia.[13] Asimismo, en la *Vista en su Fondo*, el licenciado Zayas Pérez declaró que dudaba que el sargento Curbelo Muñiz hubiera interrogado al señor Fernández Rodríguez sin la presencia del licenciado Carbone Rosario, ya que este último era un abogado con vasta experiencia.[14]

Nada en el expediente nos persuade de descartar la apreciación que de la prueba hizo el Comisionado Especial. Las contradicciones entre las declaraciones del licenciado Zayas Pérez y las del licenciado Carbone Rosario contrastan con la consistencia existente entre las declaraciones del sargento Curbelo Muñiz y de la agente Ortiz Claudio.

El sargento Curbelo Muñiz declaró en todo momento que el licenciado Carbone Rosario le informó sobre la ubicación del arma, el cargador y las municiones. Ante esto, el sargento Curbelo Ortiz indicó que llamó a la agente Ortiz Claudio, quien se encontraba investigando la escena del crimen, y le

---

[12] *Informe del Comisionado Especial*, pág. 22.
[13] Íd.
[14] Íd.

transmitió la información. Ambos declararon que, luego de un intento infructuoso de encontrar la evidencia, la agente Ortiz Claudio se comunicó con el sargento Curbelo Muñiz y que este le pasó el celular al licenciado Carbone Rosario, quien procedió a dar instrucciones a la agente para que arribara a la ubicación de la evidencia.[15]

El Comisionado Especial consideró como un hecho probado que el señor Fernández Rodríguez acudió en compañía del licenciado Carbone Rosario al cuartel. Una vez allí, el licenciado Carbone Rosario comunicó al sargento Curbelo Muñiz que el señor Fernández Rodríguez tenía la intención de entregarse y que eventualmente emitiría declaraciones sobre los hechos.

Bajo ningún supuesto, acudir al cuartel con la intención de entregarse constituye una renuncia válida al privilegio abogado-cliente ni al deber de lealtad y confidencialidad. Tampoco constituye una renuncia válida que el cliente comunique su intención de entregarse y de declarar. La entrega del cliente no es una carta blanca para revelar información cobijada por el deber de confidencialidad y lealtad sin la debida autorización de este. Esto, pues en la entrega de un cliente operan consideraciones prácticas de litigio referentes a la fianza y a la presentación de cargos en ausencia, entre otras. Asimismo, acceder a prestar declaraciones no es equiparable a que el cliente confesará la comisión del delito que se le imputa. En el caso ante nuestra consideración no se

---

[15] Íd., pág. 21.

había presentado acusación alguna contra el señor Fernández Rodríguez. A lo somero, el proceder del licenciado Carbone Rosario demostró desconocimiento de los privilegios evidenciarios, del proceso penal y de las consecuencias a las que se exponía su cliente.

Al revelar información que le relegó el señor Fernández Rodríguez, el licenciado Carbone Rosario mancilló su deber de lealtad y el principio de la confidencialidad, que es esencial en el ejercicio de la profesión. Ante este cuadro fáctico, es forzoso concluir que estamos ante prueba clara, robusta y convincente de que el licenciado Carbone Rosario violó el Canon 21 del Código de Ética Profesional al divulgar información confidencial que le proveyó el señor Fernández Rodríguez como parte de la relación fiduciaria habida entre ambos. Asimismo, ante los mismos hechos, estamos ante prueba clara, robusta y convincente de que la conducta desplegada por el licenciado Carbone Rosario no exaltó el honor de la profesión y constituye una actuación contraria a su juramento profesional. En consecuencia, se probó que el licenciado Carbone Rosario violó los Cánones 21 y 38 de Ética Profesional, *supra*.

## IV.

Concluido que el licenciado Carbone Rosario infringió los Cánones 21 y 38 de Ética Profesional, *supra*, debemos evaluar la sanción correspondiente. Hemos establecido que al imponer una sanción disciplinaria se deben tomar en consideración los factores siguientes: (1) la reputación del letrado en la comunidad; (2) su historial previo; (3) si esta constituye su

primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) el resarcimiento al cliente, y (8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos. In re Jusino Torres, 210 DPR 919 (2022); In re Sánchez Pérez, 209 DPR 235 (2022).

El licenciado Carbone Rosario fue admitido al ejercicio de la abogacía el 13 de diciembre de 1968. El 2 de diciembre de 1985 ordenamos su separación inmediata y permanente de la práctica de la profesión legal y notarial en esta jurisdicción por haber sido convicto en el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico del delito de conspiración para poseer cocaína con intención de distribuir. In re Boscio Monllor, 116 DPR 692 (1985). Posteriormente, el 10 de marzo de 2003 el licenciado Carbone Rosario presentó ante nos una solicitud de reinstalación. Tras contar con dos informes del Comité de Reputación de Aspirantes al Ejercicio de la Abogacía (Comisión) y con la comparecencia de la OPG, el 30 de noviembre de 2005 ordenamos la reinstalación condicionada del licenciado Carbone Rosario al ejercicio de la abogacía.[16]

No obstante, a un año de su reinstalación, el licenciado Carbone Rosario infringió un pilar indeleble de la profesión de la abogacía, el privilegio abogado-cliente. Esta actuación

---

[16] La reinstalación se condicionó a que durante un periodo de un año el licenciado Carbone Rosario se sometiera a pruebas periódicas de "dopaje", para comprobar que no había recaído en la condición de dependencia a sustancias controladas.

fue contraria a los deberes del abogado para con su cliente y al honor y la dignidad que el ejercicio de la profesión legal requiere. A pesar de las consecuencias severas de la conducta del licenciado Carbone Rosario, este no reconoció su impropiedad ni mostró contrición al respecto.

Por los fundamentos expuestos, se decreta la suspensión inmediata e indefinida del Lcdo. Luis E. Carbone Rosario del ejercicio de la abogacía y de la notaría, por infracciones a los Cánones 21 y 38 de Ética Profesional, *supra*.

A la luz de lo anterior, le imponemos al señor Carbone Rosario el deber de notificar a todos sus clientes de su inhabilidad de seguir representándoles, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión indefinida a los foros judiciales y administrativos donde tenga asuntos pendientes. Además, tiene la obligación de acreditar ante este Tribunal el cumplimiento de todo lo anterior dentro del término de treinta (30) días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo podría conllevar que no se le reinstale a la práctica de la profesión legal, de solicitarlo en el futuro.

De otra parte, se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del señor Carbone Rosario y entregarlos al Director de la Oficina de Inspección de Notarías (ODIN) para el correspondiente examen e informe. Además, en virtud de la suspensión inmediata e indefinida del ejercicio de la notaría, la fianza que garantiza

las funciones notariales del señor Carbone Rosario queda automáticamente cancelada. Esta fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que esta estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia por correo electrónico al señor Carbone Rosario y personalmente.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Luis E. Carbone Rosario
      (TS-3,177)

CP-2020-0001

SENTENCIA

En San Juan, Puerto Rico, a 5 de septiembre de 2025.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, decretamos la suspensión inmediata e indefinida del licenciado Carbone Rosario del ejercicio de la abogacía y de la notaría. Se le impone el deber de notificar a sus clientes de su inhabilidad para continuar representándoles, devolverles los expedientes como cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los foros judiciales y administrativos. Además, tiene la obligación de acreditar ante este Tribunal el cumplimiento de todo lo anterior dentro del término de treinta (30) días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo podría conllevar que no se le reinstale a la práctica de la profesión legal, de solicitarlo en el futuro.

De otra parte, se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del señor Carbone Rosario y entregarlos al Director de la Oficina de Inspección de Notarías (ODIN) para el correspondiente examen e informe. Además, en virtud de la suspensión inmediata e indefinida del ejercicio de la notaría, la fianza que

garantiza las funciones notariales del señor Carbone Rosario queda automáticamente cancelada. Esta fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que esta estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia por correo electrónico al señor Carbone Rosario y personalmente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                                   Javier O. Sepúlveda Rodríguez
                                   Secretario del Tribunal Supremo