EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br><br><br>Celimar Gracia Marín<br>(TS-11,638) | 2026 TSPR 1<br><br>217 DPR ___ |
| --- | --- |

Número del Caso:  CP-2022-0002


Fecha:  14 de enero de 2026


Oficina del Procurador General:

     Hon. Omar Andino Figueroa
     Procurador General

     Lcda. Mabel Sotomayor Hernández
     Subprocuradora General

     Lcdo. Edwin B. Mojica Camps
     Subprocurador General

     Lcda. Yaizamarie Lugo Fontánez
     Procuradora General Auxiliar

     Lcda. Gisela Rivera Matos
     Procuradora General Auxiliar

     Lcda. Melanie M. Mercado Méndez
     Procuradora General Auxiliar

Representantes legales de la querellada:

     Lcdo. Hugo Rodríguez Díaz
     Lcda. Susana C. Serrano Mondesí

Comisionada Especial:

     Hon. Nereida Cortés González


Materia:  Conducta Profesional – Censura enérgica y apercibimiento por infringir los Cánones 9 y 38 del Código de Ética Profesional.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| In re: | | |
| Celimar Gracia Marín | CP-2022-0002 | |
| (TS-11,638) | | |

PER CURIAM

En San Juan, Puerto Rico, a 14 de enero de 2026.

Una vez más, nos vemos en la obligación de ejercer nuestro poder inherente para disciplinar a una abogada miembro de la profesión legal. En esta ocasión, intervenimos con la Lcda. Celimar Gracia Marín por infringir los Cánones 9 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Por los fundamentos que expondremos y, tomando en consideración que se trata de la primera queja y querella en contra de la letrada en su experimentada carrera como representante legal de personas indigentes, procede únicamente que censuremos enérgicamente sus expresiones y le apercibamos respecto a futuras infracciones.

A continuación, describimos los incidentes procesales y los hechos que motivan nuestra determinación.

I

El 29 de junio de 2020, el Hon. Ricardo G. Marrero Guerrero, en calidad de Juez Administrador del Tribunal de Primera Instancia de Caguas, cursó a la Secretaría de este Tribunal una misiva para referir a nuestra atención

disciplinaria varios incidentes relativos a la conducta de la Lcda. Celimar Gracia Marín (licenciada Gracia Marín o querellada) ante distintas salas penales de la Región Judicial de Caguas.[1] En particular, nos convidó a evaluar si los incidentes referidos configuraron una infracción al Canon 9 del Código de Ética Profesional, *supra*, u alguna otra disposición. La referida misiva se acogió como una *Queja* bajo el alfanumérico AB-2020-0054 y, de conformidad con la Regla 14 (C) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XX1-B, se le concedió un término a la licenciada Gracia Marín para presentar su contestación.

El 28 de septiembre de 2020 la licenciada Gracia Marín presentó su *Contestación a queja*. En apretada síntesis, expuso su respuesta a cada uno de los incidentes señalados, explicó las circunstancias y los hechos que, a su juicio, debían tomarse en consideración al evaluar la queja, y nos solicitó su archivo.

El 4 de diciembre de 2020 se dictó una *Resolución* para ordenarle a la Oficina del Procurador General (OPG) que investigara la conducta desplegada y emitiera un informe. En cumplimiento, el 7 de junio de 2021, la OPG presentó un

---

[1] Los incidentes ocurrieron en las vistas de los siguientes casos: *Pueblo v. Carmelo Montañez Pérez*, Casos Núm. E1VP201901172 al 01173 y el E1VP201901522; *Pueblo v. Samuel Santos Correa*, Casos Núm. E1VP201901308 al 01310; *Pueblo v. José A. Canino Santos*, Casos Núm. E1VP201901844 al 01851; *Pueblo v. María de Lourdes Mustafa Claudio*, Casos Núm. E1VP201902194 al 02196; *Pueblo v. Guillermo García Oyola*, Caso Núm. ESVP202000006; *Pueblo v. Santos I. Nazario Díaz*, Casos Núm. E1VP201800502 al 00507; *Pueblo v. Mykhor Alex Mercado González,* Casos Núm. ESVP202000011 al 00014.

*Informe del Procurador General* en el que consignó que la licenciada Gracia Marín pudo haber infringido los Cánones 1, 9, 18 y 38 del Código de Ética Profesional, *supra*, y nos recomendó iniciar el procedimiento disciplinario en su contra.

El 12 de enero de 2022 se dictó una *Resolución* para instruir a la OPG a presentar la querella correspondiente, con el fin de continuar el procedimiento disciplinario, lo cual realizó mediante la presentación de la querella de epígrafe el 9 de marzo de 2022. En esta, se le imputó a la licenciada Gracia Marín la infracción de los Cánones 1, 9, 18 y 38 del Código de Ética Profesional, *supra*. En resumen, respecto a cada uno de los cargos se detalló lo siguiente:

**Cargo I, infracción al Canon 1:** De las grabaciones de las diferentes vistas, surge que la licenciada Gracia Marín, a pesar de ser abogada de la Sociedad para Asistencia Legal, informó en diversos casos que no participaría del proceso, no intervendría en el caso, no comparecería a vistas o a sala y no contrainterrogaría a un testigo. Además, intentó abandonar a un cliente en sala, y regresó solamente porque el Juez Flores Sellés le indicó que se exponía a un desacato si abandonaba la sala.

**Cargo II, infracción al Canon 9:** De las grabaciones de las vistas surge que la licenciada Gracia Marín no solo hizo expresiones que resultan insultantes para los tribunales, como decir "esto es un disparate" y que lo decidido por el Juez era una "barbaridad", sino que retó constantemente la autoridad de los jueces y la jueza, con la consecuencia de no respetar la posición que estos últimos asumían. Incluso, insinuó que la Oficina de la Administración de Tribunales había impartido directrices a los jueces para que no desestimaran los casos.

**Cargo III, infracción al Canon 18:** La querellada no fue diligente, ni rindió una labor idónea y competente cuando intentó abandonar la sala del tribunal y dejar al cliente solo, durante un procedimiento criminal, y al manifestar al tribunal que: no contrainterrogaría, no participaría de un proceso, no intervendría en un caso porque no se iba a prestar para eso, y no estaba preparada para la vista.

**Cargo IV, infracción al Canon 38:** La totalidad del comportamiento de la querellada, en sus comparecencias en los casos ante los diferentes jueces del Tribunal de Primera Instancia, no exaltó el honor y la dignidad de la profesión. La querellada tuvo una conducta que demostró falta de respeto no solo a los jueces que presidían los procedimientos, sino que tuvo la consecuencia de no brindarle representación legal adecuada a sus clientes y de afectar la consecución de una mejor administración de la justicia. El comportamiento de la querellada, y muchas de sus expresiones, fueron desafiantes a la autoridad de los jueces.[2]

El 6 de mayo de 2022, la licenciada Gracia Marín presentó su *Contestación a querella.* En esta expuso que, en ninguno de los incidentes, el Juez o la Jueza que presidía los procedimientos entendió meritorio hacer uso de las herramientas a su disposición en caso de que la conducta atentara contra la dignidad del tribunal o que entorpeciera los procedimientos, como sería la imposición de desacato o de sanciones económicas. Además, explicó lo ocurrido en cada uno de los incidentes y argumentó que, en algunos de estos, se trató del desahogo de una frustración e incredulidad en el fragor de la litigación, sin ánimo de faltar el respeto al tribunal. Similarmente, reconoció que debió haber

---

[2] *Querella Núm.* CP-2022-0002, págs. 16-17.

utilizado otro lenguaje y expresó arrepentimiento por su proceder. Por último, explicó que su decisión de no contrainterrogar a un testigo obedeció a su estrategia legal. Por todo ello, solicitó que se declarara no ha lugar la querella en su contra o, en la alternativa, se tomaran en consideración las circunstancias y los atenuantes aplicables.

El 12 de noviembre de 2024 dictamos una *Resolución* para designar a la Lcda. Nereida Cortés González como Comisionada Especial. Ante ello, se le encomendó recibir la prueba y rendir un informe con determinaciones de hechos y la recomendación disciplinaria que estimara procedente.

En cumplimiento, el 19 de agosto de 2025 recibimos el *Informe de la Comisionada Especial*. Surge del mismo que, el 18 de julio de 2025 se realizó la vista evidenciaria en la que se admitieron por estipulación varios documentos, incluyendo las grabaciones de las vistas celebradas ante el Tribunal de Primera Instancia, así como sus transcripciones y cinco (5) declaraciones juradas de los testigos de reputación de la querellada. Además, la licenciada Gracia Marín ofreció su propio testimonio y fue contrainterrogada por la representación de la OPG. Según se detallara, la Comisionada Especial encontró prueba clara, robusta y convincente de infracción a los Cánones 9 y 38 de Ética Profesional, mas no de los Cánones 1 y 18.

Finalmente, el 8 de septiembre de 2025, la OPG presentó una *Reacción de la Oficina del Procurador General al Informe*

*de la Comisionada Especial.* En síntesis, expresó que, a su entender, cumplió con el estándar de prueba requerido para demostrar la infracción en los cuatro (4) cargos que se le imputaron a la querellada.

Con ello en mente, examinemos las disposiciones éticas aplicables.

## II

### A.

Como parte del poder inherente que tenemos para regular la profesión legal, nos corresponde velar porque las personas admitidas a ejercer la práctica de la abogacía y de la notaría desempeñen sus funciones de manera responsable, competente y diligente. *In re Rivera Rodríguez*, 2025 TSPR 69, 216 DPR ___ (2025); *In re Pérez Fernández*, 213 DPR 950, 956 (2024)*; In re Malavé León*, 211 DPR 971, 977 (2023).

Es sabido que el Código de Ética Profesional constituye las normas mínimas sobre la conducta de los miembros de la profesión legal que ejercen la abogacía. Preámbulo de los Cánones de Ética Profesional, *supra*. El incumplimiento con las normas que impone el ordenamiento ético y la ley acarrea la imposición de sanciones disciplinarias. *In re Pérez Rojas*, 2025 TSPR 90; *In re Torres Alvarado*, 212 DPR 477, 485 (2023); *In re Irizarry Irizarry*, 190 DPR 368, 374 (2014).

Como vimos, a la licenciada Gracia Marín se le imputó haber infringido los Cánones 1, 9, 18 y 38 del Código de

Ética Profesional, *supra*. A continuación, repasamos las exigencias de cada uno de estos.

B.

En múltiples ocasiones hemos expresado que los abogados y las abogadas que ejercen la práctica en nuestra jurisdicción desempeñan una función eminentemente pública, por lo que se les considera oficiales de los tribunales. *In re Hance Flores*, 193 DPR 767, 774 (2015); *In re Rodríguez Santiago*, 157 DPR 26, 31 (2002). A esos efectos, los abogados y las abogadas tienen un deber ineludible, que comparten con el Estado, de garantizar a las personas imputadas de un delito asistencia legal en todo proceso criminal. Véase Art. II, Sec. 11, Const. PR, LPRA, Tomo 1. Este derecho, de entronque constitucional, se ha reconocido, además, como un componente fundamental del debido proceso de ley. Véanse: *In re García Muñoz*, 160 DPR 744, 751 (2003); *In re Rodríguez Santiago*, *supra*; *Ramos Acevedo v. Tribunal Superior*, 133 DPR 599, 609 (1993). Al desempeñar esta función, todo profesional del Derecho tiene el deber de conformar su conducta a aquellos principios dirigidos a asegurar el justo y buen funcionamiento de nuestro sistema de justicia. *Pueblo v. Quiles Negrón et al.*, 193 DPR 609, 619 (2015) (*Per curiam*).

A tenor con este mandato constitucional, el Canon 1 del Código de Ética Profesional, *supra*, dispone lo siguiente:

> Constituye una obligación fundamental de todo abogado luchar continuamente para garantizar que toda persona tenga acceso a la representación

capacitada, íntegra y diligente de un miembro de la profesión legal.

En la consecución de este objetivo el abogado debe aceptar y llevar a cabo toda encomienda razonable de rendir servicios legales gratuitos a indigentes, especialmente en lo que se refiere a la defensa de acusados y a la representación legal de personas insolventes. La ausencia de compensación económica en tales casos no releva al abogado de su obligación de prestar servicios legales competentes, diligentes y entusiastas.

También es obligación del abogado ayudar a establecer medios apropiados para suministrar servicios legales adecuados a todas las personas que no pueden pagarlos. Esta obligación incluye la de apoyar los programas existentes y la de contribuir positivamente a extenderlos y mejorarlos.

Al interpretar el referido Canon 1, hemos afirmado que los abogados y las abogadas admitidos a ejercer la profesión legal en nuestra jurisdicción tienen la obligación ética de asumir la representación legal de una persona indigente cuando son designados como abogados o abogadas de oficio por un tribunal. *In re Hance Flores*, *supra*, págs. 775-776. Véase *In re Rodríguez Santiago*, *supra,* pág. 35. Además, hemos afirmado que, luego de la designación de oficio correspondiente por un tribunal, asumir la representación legal de una persona indigente en un procedimiento criminal no sólo constituye una obligación ética, sino también un deber impuesto por ley. *In re Hance Flores, supra*, pág. 35. Véase *In re García Muñoz*, *supra*, pág. 753.

Como resultado, constituye una conducta no solo reprochable, sino también sancionable, que un letrado o una letrada se niegue a ofrecer sus servicios profesionales a

una persona indigente a quien se le encausa criminalmente, sin aducir una razón legítima que pueda anteponerse al interés apremiante de garantizarle su derecho constitucional a contar con representación legal. *Pueblo v. Quiles Negrón et al.*, *supra*, (*Per curiam*), citando a *In re Rodríguez Santiago*, *supra*, pág. 36.

C.

Conforme lo ha reiterado este Tribunal en innumerables ocasiones, el Canon 9 del Código de Ética Profesional, *supra*, exige que todos los miembros de la profesión "observ[en] para con los tribunales una conducta que se caracterice por el mayor respeto". El deber de respeto que surge del Canon 9 tiene dos (2) vertientes. La primera implica el deber de respetar las órdenes y directrices emitidas por los tribunales, las cuales, a su vez, solamente pueden ser impugnadas por medio de los cauces apelativos apropiados (respeto a la autoridad judicial). S. Steidel Figueroa, *Ética y responsabilidad disciplinaria del abogado*, San Juan, Pubs. JTS, 2010, pág. 312.[3] La segunda vertiente "enuncia el deber de los abogados y las abogadas de respetar a 'jueces, empleados y funcionarios del tribunal, tanto en comparecencias formales, personales o por escrito, como cuando interactúa[n] informalmente con éstos [...]'"

---

[3] Véase, además, S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria del abogado*, San Juan, Ed. SITUM, 2016, pág. 371.

(respeto de carácter cívico). Íd., citado en *Pueblo v. Quiles Negrón et al., supra,* pág. 620.

De esta manera, el Canon 9 requiere que cuando los profesionales del Derecho se dirijan al tribunal o a uno de sus funcionarios lo hagan con respeto y deferencia. Íd. *Pueblo v. Quiles Negrón et al., supra.* El respeto y la deferencia hacia los jueces y las juezas trasciende los formalismos de llamarles "honorable" o "ilustrado". *In re Crespo Enríquez,* 147 DPR 656, 664 (1999). Tales muestras de respeto y consideración tienen que estar a la altura de lo que se espera de todos y cada uno de los funcionarios del tribunal en los planteamientos que luego se formulan. Íd. Si en algo se equivoca el juez o la jueza que preside los procedimientos, el remedio que tiene la persona que ejerce la abogacía no es injuriarlo, sino solicitar que reconsidere o recurrir a un tribunal de superior jerarquía para no infringir los principios básicos de deferencia y consideración hacia los tribunales. Íd., págs. 664-665. Por ello, hemos expresado que:

> el que un abogado defienda apasionada y diligentemente la causa de acción de su cliente, no es incompatible con la exigencia de que cuando vaya a dirigirse al tribunal lo haga respetuosa y decorosamente. Ello, no empece a que reconocemos que hay instancias en que a los abogados —que con tesón y esmero defienden las causas de sus clientes— les causa desazón las determinaciones adversas que puedan hacer los tribunales; no obstante, ello no es licencia para cuestionar la dignidad, honestidad y ecuanimidad de los miembros de la Judicatura. *In re Crespo Enríquez, supra*, pág. 663.

En consecuencia, ante determinaciones adversas en los casos que representan, los abogados y las abogadas poseen las herramientas y los remedios adecuados que el propio ordenamiento les provee para revisarlas. En atención a la autoridad que poseen los tribunales de justicia y a la deferencia y respeto que merecen, es a esos remedios a los que los profesionales del Derecho están obligados a recurrir para vindicar sus reclamos. *Pueblo v. Quiles Negrón et al., supra,* pág. 621. Entiéndase, la discrepancia con una determinación judicial no justificará que el abogado o la abogada incurra en el uso de lenguaje impropio o hiriente. *In re Pagán*, 116 DPR 107, 111 (1985). Las razones de civilidad imponen esta sencilla norma. Íd.[4]

Los profesionales que ejercen la abogacía pueden disentir respetuosamente del dictamen de un juez o una jueza. S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria del abogado*, op. cit., pág. 375. Nos comenta el Hon. Juez Steidel Figueroa que un disenso respetuoso será aquel que "se ciñe a discutir los méritos de una determinación judicial sin

---

[4] Para otros casos en los que hemos censurado las expresiones o disciplinado la conducta de abogados y abogadas, véanse: *In re González Cardona*, 179 DPR 548 (2010); *In re Rochet Santoro*, 174 DPR 123 (2008); *In re López de Victoria I*, 163 DPR 1 (2004); *In re Markus*, 158 DPR 881 (2003); *In re Rivera García*, 147 DPR 746, 749 (1999); *In re Miranda Marchand,* 135 DPR 580 (1994); *Pueblo v. Ruiz Negrón*, 113 DPR 17, 22 (1982); *In re Pagán Hernández*, 105 DPR 796, 801-802 (1977), entre otros.

consideraciones ajenas al derecho y al razonamiento jurídico pertinente". Íd.

Por otra parte, de acuerdo con este Canon, las abogadas y los abogados tienen el "deber de cumplir pronta y diligentemente todos nuestros requerimientos y órdenes, pues su desatención constituye un desafío a nuestra autoridad". *In re Malavé León*, *supra*, pág. 977. El incumplir con las órdenes de un tribunal denota una actitud de menosprecio e indiferencia hacia la autoridad de este último y constituye una violación al Canon 9. *In re Carmona Rodríguez*, 206 DPR 863, 868 (2021).

D.

El Canon 18 del Código de Ética Profesional, *supra*, requiere que los y las profesionales del Derecho rindan una labor idónea, competente, cuidadosa y diligente. *In re Pérez Rojas*, 213 DPR 244, 256 (2023); *In re Lugo Quiñones I*, 206 DPR 1, 10-11 (2021). Los abogados y las abogadas tienen el deber de defender los intereses de su cliente empleando la mayor capacidad, lealtad, responsabilidad, efectividad y honradez. *In re Amill Acosta*, 181 DPR 934, 939 (2011). Esto implica que la profesión de la abogacía no se puede ejercer con indiferencia, desidia, despreocupación, inacción y displicencia en la tramitación de un caso. *In re Ramos Bahamundi,* 2025 TSPR 43, 215 DPR ___ (2025); *In re Carrasquillo Bermúdez*, 203 DPR 847, 861 (2020).

Si el abogado o la abogada no puede prepararse y actuar como la profesión lo exige, no debe asumir la representación

legal. *In re Bonhomme Meléndez*, 202 DPR 610, 623 (2019). Por tanto, "[h]emos sostenido, sin ambages, que aquella actuación negligente que pueda conllevar, o que en efecto conlleve, la desestimación o el archivo de un caso, se configura violatoria del citado Canon 18". *In re García Incera*, 201 DPR 1043, 1049 (2019). Algunas de las conductas que acarrean la infracción de este mandato ético son: (1) no responder planteamientos medulares; (2) ignorar órdenes judiciales o administrativas; (3) incurrir en errores crasos; (4) desatender o abandonar el trámite de un caso, y (5) permitir que la acción se desestime sin realizar esfuerzos para evitarlo. *In re Pérez Rojas*, *supra*, pág. 257; *In re Cardona Estelritz*, 212 DPR 649, 666 (2023).

E.

El Canon 38 del Código de Ética Profesional, *supra*, establece el deber de todo abogado o abogada de exaltar el honor y la dignidad de su profesión, y de evitar la apariencia de conducta profesional impropia. La apariencia de conducta impropia lacera la imagen, la confianza y el respeto que nuestra sociedad deposita en la profesión y en las instituciones de la justicia. *In re Carbone Rosario*, 2025 TSPR 88, citando a *In re Otero, Pacheco*, 200 DPR 561, 584 (2018); *In re Guemárez Santiago*, 191 DPR 611, 620 (2014). Así, un abogado o una abogada debe regirse conforme a los más altos postulados éticos. *In re Rádinson Pérez et al.*, 204 DPR 522, 542 (2020); *In re Rivera Rodríguez*, 202 DPR 1026, 1053 (2019). Ello se debe a que nuestra profesión

tiene un gran impacto en la vida y en la propiedad de otras personas. Íd. A la luz de esto, la clase togada debe -y tiene que- conducirse con dignidad y honor en el ejercicio de sus funciones profesionales. Canon 38 del Código de Ética Profesional, *supra*.

F.

En el pasado, a los fines de guiar la ardua tarea de examinar y ponderar la conducta de los abogados y las abogadas —tanto oral como escrita— hemos elaborado tres (3) criterios que abonan a que emitamos determinaciones más justas y equitativas. Los criterios son: (1) si, aunque equivocado, el abogado o la abogada creía en la validez de las imputaciones al juez o jueza; (2) si, aunque los hechos no eran ciertos, tenía motivos fundados o causa probable para creer en su veracidad; y (3) si la imputación no fue hecha maliciosamente con el propósito deliberado de denigrar al tribunal. *In re Crespo Enríquez*, *supra*, pág. 664; *In re Cardona Álvarez*, 116 DPR 895, 906 (1986).

**III**

Para adjudicar este proceso disciplinario y justipreciar los cuatro (4) cargos imputados, es necesario evaluar si cierta conducta de la licenciada Gracia Marín quebrantó el Código de Ética Profesional, *supra*. Con este propósito, debemos examinar las determinaciones de hechos del *Informe de la Comisionada Especial,* realizadas tras la debida adjudicación de credibilidad y evaluación de la

prueba documental. Se consignaron, en lo pertinente, las siguientes determinaciones de hechos:

1. La Lcda. Celimar Gracia Marín fue admitida al ejercicio de la abogacía el 20 de junio de 1996, y al ejercicio de la notaría el 14 de febrero de 1997.

2. Desde el 1 de agosto de 1997 se integró a la Sociedad para Asistencia Legal (SAL), donde ha laborado hasta el presente, representando a personas indigentes en casos criminales de naturaleza grave o menos grave.

3. El director de la SAL se encarga de preparar el turno semanal por abogados, lo que dependerá de la cantidad de abogados que haya disponible. Esos turnos usualmente son de una semana.

4. En promedio, cada abogado atiende 1,200 casos por año y 100 por semana. En Bayamón, la querellada tenía una carga de aproximadamente 20 casos diarios y en Caguas entre 10 a 12 casos, en distintas etapas del proceso. Cada caso por cliente puede tener más de un expediente.

5. La querellada ha participado como abogada de la SAL en más de 15,000 casos.

6. Al estar los casos en distintas etapas, los señalamientos son simultáneos, lo que como abogada requiere estar en distintas salas y en distintos pisos del tribunal al mismo tiempo, incluso para los señalamientos de vista preliminar que se señalan a la misma hora.

7. Para el año 2000, cuando la querellada llegó al Tribunal de Caguas a prestar servicios en la SAL, la Jueza Cruz Vélez presidía una sala de vistas preliminares. Entonces, Edwin Flores Sellés no era juez; era su compañero de trabajo en la oficina de la SAL. El Honorable Marrero Guerrero tampoco era juez en Caguas.

8. Durante un tiempo, para el mismo periodo en que atendía asuntos de adultos, la querellada había sido asignada también al Programa de Menores, por lo que los casos de esos asuntos se atendían en un piso distinto debido a la confidencialidad que se provee a ese tipo de proceso.

9. La licenciada Gracia Marín dejó de trabajar en la oficina local de Caguas en el 2020. Ese año fue significativo porque hubo una pandemia que provocó el

cierre de los trabajos en los tribunales el 16 de marzo de 2020.

10. El 24 de agosto de 2020, mientras llevaba a su hija a la universidad en Massachussets, la licenciada Gracia Marín fue notificada de una carta del Juez Marrero Guerrero con relación a un incidente en su sala, la cual también mencionaba incidentes en las salas de otros jueces. La carta llegó a la oficina de la SAL de Humacao, desde donde le llamaron para informarle que se había recibido, dirigido a ella, un sobre con el Tribunal Supremo como destinatario.

11. Al recibir la información sobre esa carta, la licenciada Gracia Marín pidió traslado para otra región, puesto que comparecía casi diariamente a las salas que esos jueces presidían. Se entendió que, el que ella no pudiera asistir a esas salas, si se mantenía en Caguas, causaría un disloque sobre los casos.

12. Cuando regresó de Boston, tras conocer de la queja, como medida correctiva fue directo a laborar a otra región (Humacao). No ha regresado al Tribunal de Caguas y no ha tenido contacto con sus salas.

13. Luego, determinó buscar otro lugar de trabajo y en lugar de postular, dedicarse a preparar escritos de revisión en la División de Apelaciones de la SAL, labor a la que se dedica en la actualidad.[5]

**En adelante, resumimos los hechos determinados por la Comisionada Especial respecto a cada uno de los incidentes que motivaron los cargos en contra de la querellada.**

**Incidente 1**: Vista Preliminar ante la Hon. Ana Paulina Cruz Vélez el 18 de junio de 2018 en la Sala 202, en *Pueblo v. Santos I. Nazario Díaz*, Casos Núm. E1VP201800502 al 00507.

El caso era uno de alto interés público, debido a que la persona fallecida era un policía municipal. La abogada de oficio de uno de los coimputados había notificado que llegaría más tarde por un asunto relacionado con su padre, situación que conocía el Tribunal y la licenciada Gracia

---

[5] Informe de la Comisionada Especial, págs. 6-9.

Marín. La demora de la otra abogada había impedido comenzar la vista preliminar.

Ese día, la licenciada Gracia Marín estaba atendiendo asuntos de distintos acusados en varias salas, todos señalados para el mismo día. Uno de esos casos correspondía a una vista preliminar en la Sala 201. Mientras se encontraba postulando en esa sala, se recibieron tres (3) llamadas de la sala de la Jueza Cruz Vélez requiriendo la presencia de la licenciada Gracia Marín en su Sala 202. En la tercera llamada, la Jueza que presidía la Sala 201 interrumpió a la querellada mientras postulaba, para señalar que había informado al alguacil que la abogada se encontraba postulando y que cuando terminara pasaría a la otra sala. No se le consultó o brindó oportunidad a la querellada de ir a la Sala 202. La Jueza de la Sala 201 se encargó personalmente de notificar que la querellada estaba ocupada en otro asunto. Incluso, antes de todo ello, la licenciada Gracia Marín había acudido a la Sala 202 a informar que estaría en la Sala 201.

Al terminar la vista en la Sala 201, la querellada fue a la Sala 202 y, al entrar, observó que la vista preliminar había comenzado, que el testigo principal estaba declarando mientras su representado estaba, a su entender, solo en la sala. En el salón de sesiones estaba presente otro abogado de la SAL de otra jurisdicción, quien apoyaba el trámite del caso, y la Jueza resolvió que la vista podía dar inicio.

Al entrar, la querellada no tenía conocimiento del estado del procedimiento, por lo que cuestionó el inicio de la vista y tuvo un intercambio verbal con la Jueza que excedió los cinco (5) minutos. Su intención era consignar para récord lo que consideró una absoluta falta de respeto hacia ella, el que la vista hubiese iniciado sin su presencia y con el conocimiento de que estaba postulando en la sala contigua ("ha sido una total y absoluta falta de respeto lo que ha hecho el tribunal hacia esta abogada").[6]

La Jueza Cruz Vélez le apercibió a la querellada que había dos (2) abogados en la sala y le instruyó en dos (2) ocasiones a sentarse y no interrumpir los procedimientos. Luego de esto, la querellada participó activamente en el contrainterrogatorio de los testigos. Asimismo, postuló ante la Jueza Cruz Vélez en otros casos.

**Incidente 2**: Vista Preliminar en alzada ante el Hon. Edwin Flores Sellés el 30 de septiembre de 2019, en *Pueblo v. Carmelo Montañez Pérez*, Casos Núm. E1VP201901172 al 01173 y el E1VP201901522.

El perjudicado y testigo del caso había fallecido y el Ministerio Público solicitó que se diera por sometido con la regrabación de la declaración del testigo, no disponible, que prestó en una vista en alzada de causa probable para arresto relacionada a otro delito. La querellada expresó su reparo al uso de la grabación y consignó sus fundamentos respecto a asuntos del testimonio anterior y a la falta de

---

[6] *Informe de la Comisionada Especial*, págs. 10-11.

oportunidad de contrainterrogar al testigo por parte de la defensa.

El Juez resolvió que escucharía la grabación, lo que dio lugar a una argumentación entre la querellada y el Juez sobre la determinación tomada. Entretanto, la querellada indicó que no se podría ver la vista porque iba a recurrir del dictamen. A eso añadió que "si esa es la justicia que se le quiere dar a nuestro representado, yo no me voy a prestar para eso. Yo quiero defenderlo con todas las de la ley, y que a mí en un Tribunal de superior jerarquía aquí, me diga que esto está avalado".[7] La argumentación prosiguió, el Juez reiteró que se vería la vista y le indicó a la querellada que si se quería marchar lo hiciera, pues no pelearía con ella. La querellada continuó con expresiones como: "[e]l tribunal se satisface con cualquier cosa que le diga el fiscal" y "[e]sto es bárbaro".[8]

En el procedimiento disciplinario, la querellada manifestó que para ella era importante que el Tribunal entendiera su planteamiento en derecho y que, superado ese asunto, la vista continuó con normalidad y con su participación activa.

**Incidente 3:** Vista Preliminar ante el Hon. Edwin Flores Sellés el 25 de octubre de 2019, en *Pueblo v. Samuel Santos Correa*, Casos Núm. E1VP201901308 al 01310.

---

[7] Íd., pág. 14.

[8] Íd., pág. 15.

Terminado el desfile de prueba, el Juez preguntó a las partes si daban el caso por sometido para proceder con su dictamen. La querellada le respondió que sí y que esperaría por la determinación para pedir la reconsideración. El Juez le preguntó qué quería decir con eso, pues cómo pediría reconsideración si el Tribunal aún no había resuelto. Finalmente, el Tribunal determinó causa probable en todos los delitos imputados.

En su testimonio en el procedimiento disciplinario, la licenciada Gracia Marín explicó que, por su experiencia de veintiocho (28) años de litigio, pudo percatarse de que el Juez estaba buscando en su agenda una fecha para la lectura de la acusación y, que, por ello, se expresó de esa forma, por frustración. A su entender, el asunto debía resolverse con una determinación de no causa y trató de canalizar su frustración formulando una reconsideración. Adujo que no abandonó a su cliente y que, durante el proceso judicial, hizo varias gestiones a favor del cliente, entre ellas, visitar a la madre en el pueblo de Cayey.

**Incidente 4:** Vista Preliminar ante el Hon. Edwin Flores Sellés el 5 de noviembre de 2019, en *Pueblo v. José A. Canino Santos*, Casos Núm. E1VP201901844 al 01851.

Surgió una argumentación entre el Ministerio Público y la querellada, en su rol como abogada de defensa, respecto a una solicitud para que el testimonio de una menor fuese vertido en circuito cerrado. El Juez Flores Sellés decidió señalar una vista de necesidad y la querellada inició una alocución a los fines de solicitar la inhibición del Juez.

En síntesis, señaló que para el año 2000 habían sido compañeros de trabajo en la SAL y que, al realizar la estadística de los casos que había litigado ante él, todos habían resultado en causa probable. ("...es una incomodidad, es un malestar, es una falta de [consideración] en el trabajo que nosotros realizamos. Nosotros hemos hecho una estadística de todos los casos que hemos visto en esta sala y todos, y cada uno de ellos, todos, de los veinticuatro (24) casos que hemos visto en esta sala, todos han sido causa").[9]

El Juez Flores Sellés instruyó a la querellada a presentar la solicitud formal de recusación conforme al procedimiento dispuesto para ello. La querellada expresó en la vista evidenciaria que percibía un trato hostil de parte del adjudicador y que ella tenía un deber y responsabilidad ético con sus clientes, a fin de que entendieran su compromiso con el caso y el servicio. La referida solicitud de inhibición no se presentó porque, a juicio de la directora de la SAL, causaría un disloque en el trabajo uniforme de los casos.

**Incidente 5**: Vista de necesidad ante el Hon. Edwin Flores Sellés el 9 de noviembre de 2019, en *Pueblo v. José A. Canino Santos*, Casos Núm. E1VP201901844 al 01851.

El Ministerio Público presentó una solicitud para que el testimonio de una menor fuese vertido mediante circuito cerrado. Por tratarse de un equipo del Departamento de

---

[9] Íd., pág. 18.

Justicia, el mismo no está fijo en la sala y requiere de una coordinación con ese Departamento, por lo que debe solicitarse, de manera que la menor pueda declarar en un espacio separado, en la eventualidad de que se declare con lugar la vista de necesidad.

Cuando la licenciada Gracia Marín entró a la Sala y vio el equipo instalado, cuestionó su presencia e insinuó que ya se había predeterminado que el caso se vería por circuito cerrado. El Juez explicó que el sistema de circuito cerrado no estaba instalado para ese caso, sino para otro de otra sala que se celebraría en la suya. El Juez manifestó: "[…] [e]l usted sugerir que, porque el equipo está instalado, es que la vista es automática, primero, es una falta de respeto al tribunal y a este juez".[10]

Tras una solicitud de transferencia de vista, se coordinó una nueva fecha. La licenciada Gracia Marín declaró que, al ver el sistema instalado, pensó que la vista preliminar se llevaría a cabo en lugar de la vista de necesidad.

**Incidente 6:** Vista Preliminar ante el Hon. Edwin Flores Sellés el 29 de enero de 2020, en *Pueblo v. José A. Canino Santos*, Casos Núm. E1VP201901844 al 01851.

La licenciada Gracia Marín cuestionó si a los funcionarios que se encontraban en el salón de circuito cerrado se les tomaría juramento y si otras personas podían permanecer en la sala. El Juez le respondió que la regla

---

[10] Íd., págs. 19-20.

procura proteger al menor declarante y que en la sala podrían quedarse personas si el Tribunal lo permitía. A lo que la querellada respondió "[e]so es un disparate, Juez".[11]

El Juez Flores Sellés le requirió que tuviese cuidado con la manera en que se refería al Tribunal, le recordó que, si creía que estaba equivocado, tenía los mecanismos legales para cuestionarlo sin tener que llamarle "disparatero" y aseveró que nada en la regla hacía alusión a que el salón de sesiones debía estar vacío. Posterior a ello, se continuó con la vista y se determinó causa probable.

**Incidente 7**: Vista Preliminar en Alzada ante el Hon. Ricardo Marrero Guerrero el 19 de febrero de 2020, en *Pueblo v. Guillermo García Oyola*, Caso Núm. ESVP0202000006.

Al finalizar la vista con una determinación de causa bajo el Art. 5.05 de la Ley de Armas, se suscitó un diálogo entre la licenciada Gracia Marín y el Juez Marrero Guerrero. En síntesis, la querellada hizo múltiples expresiones, como, por ejemplo, ¿"[c]ómo es posible una cosa semejante?", "[y]o no puedo creer esto, de verdad. Esto es una barbaridad".[12] El Juez le apercibió que tuviese cuidado con sus expresiones, pues podía incurrir en una violación ética.

Posteriormente, la querellada manifestó que no sabía si podría asistir a una vista preliminar en alzada de esa tarde ante el Juez Marrero Guerrero en el Tribunal de Menores porque tenía una situación familiar que atender. El Juez

---

[11] Íd., pág. 20.

[12] Íd., pág. 22.

expresó que llegaría a la vista y haría la determinación, a lo que la querellada respondió que "[s]i la gobernadora se puede excusar por una situación familiar, esta abogada también".[13]

El Juez Marrero Guerrero volvió a solicitarle que tuviese cuidado con sus manifestaciones y, de igual manera, sostuvo que, por el temperamento y tono de la querellada, parecía que estaba anunciado su ausencia como sanción a la determinación del caso. La licenciada Gracia Marín respondió que era su percepción, que entendiera lo que quisiera entender y que no podría llegar en la tarde. ("Esa es su percepción, esa es su percepción, usted entienda lo que... verdad, lo que usted quiera entender").[14] Posteriormente, la vista preliminar en alzada de esa tarde se llevó a cabo con la comparecencia de la querellada.

**Incidente 8**: Vista Preliminar en Alzada ante el Hon. Edwin Flores Sellés el 20 de febrero de 2020, en *Pueblo v. María de Lourdes Mustafa Claudio*, Casos Núm. E1VP201902194 al 02196.

La querellada entrevistó a la acusada, quien llegó al tribunal confinada y expresó que tenía como abogado al Lcdo. Heriberto Martínez Madera. La SAL consideró asumir la representación legal porque ese abogado no había comparecido. La querellada explicó que trató de ayudar a la confinada, pero que, por los parámetros de indigencia de la SAL, estaba impedida de representarla. Estando en sala, el

---

[13] Íd.

[14] Íd., pág. 23.

alguacil se le acercó a la querellada y le indicó que el Lcdo. Frank Rosas había llamado preguntando por el estatus del caso y se le había contestado que debía comparecer si era el abogado del caso.

El Juez Flores Sellés le preguntó a la imputada si tenía o no abogado y esta le dijo que no contrataría representación, pues estaba presente la querellada. El Juez decidió que la vista se vería, a lo que la licenciada Gracia Marín insistió en que se hiciera un re-señalamiento para dialogar con el abogado de la imputada y aclarar el asunto de la representación.

Se produjo un extenso diálogo entre el Juez Flores Sellés y la querellada, pues esta le repitió que, como ella tenía otros casos señalados para ese día, no podía atender este caso. El Juez le respondió que los demás asuntos tendrían que esperar porque ya se encontraban allí. La querellada le respondió:

> No, juez, porque lo que pasa es, que no es tan sencillo como que lo otro que espere, porque fíjese que en el día de ayer fue la misma situación y los demás no pudieron esperar por esta abogada y el juez de menores estaba molesto, precisamente por esa dinámica de que los demás esperen.
>
> […]
>
> Si, pero lo que ocurre es que nosotros hemos sido más que diligentes con el Tribunal y le hemos explicado en derecho cuáles son las razones por la[s] cuales no podemos atender este asunto. Y nosotros no nos podemos seguir sometiendo a estar viendo casos en esta sala en los cuales no estamos preparados y que el Tribunal nos obliga porque simplemente para sus estadísticas tiene que aparecer que el caso solamente tenga uno o dos re-señalamientos, sin tomar en consideración a esa

dama que está sumariada desde el veintitrés de diciembre y sin tomar en consideración la preparación que requiere un abogado para poder entrar a una vista, y más, cuando tenemos una sala que no es nada condescendiente con la defensa, y es harto conocido en este Tribunal.

[…]

Que conste para registro que esta dama se va a encontrar en la mañana de hoy, gracias al Tribunal en estado de indefensión, porque la defensa ha manifestado en múltiples y reiteradas ocasiones, que no estamos preparados para entrar a ver la vista de este caso y que el Tribunal arbitrariamente insiste en que la defensa entre a ver este caso a pesar de que solamente la defensa ha suspendido este asunto en una sola ocasión porque en las demás ocasiones no tenemos absolutamente nada que ver con este caso. Y ella tiene derecho a una representación legal adecuada, no proforma, no proforma. No que meramente se siente un testigo y que ella esté sentada y que el juez cuando termine determine causa. A eso no es que ella tiene derecho.[15]

Acto seguido, la querellada solicitó transferencia de señalamiento para poder brindar una representación legal adecuada. Por su parte, el Juez reiteró que el caso se celebraría con ella. La licenciada Gracia Marín repitió que no vería el caso, aun así el Tribunal le ordenó, so pena de desacato, que atendiera el asunto. Ante la insistencia de la querellada de solicitar permiso para retirarse se le volvió a advertir.

Posteriormente, el Juez ordenó a la querellada tomar asiento e iniciaron los procedimientos. La licenciada Gracia Marín informó que no contrainterrogaría al testigo por no estar preparada. Asimismo, expresó que consideraba que el

---

[15] Íd., págs. 24-26.

Juez debió ser más lenitivo y condescendiente con los abogados de la SAL, pues en el pasado laboró para esa entidad, por lo que debía entender la carga de trabajo.

La querellada no abandonó la sala y la vista se vio en sus méritos. El caso terminó con archivo por transacción.

**Incidente 9**: Vista Preliminar en Alzada ante el Hon. Ricardo Marrero Guerrero el 22 de junio de 2020, en *Pueblo v. Mykhor Alex Mercado González,* Casos Núm. ESVP202000011 al 00014.

Se trató de una vista en la que el imputado estaba bajo fianza. La determinación de no causa probable para acusar fue emitida el 16 de enero de 2020 y el mismo día se pautó la vista preliminar en alzada para el 19 de febrero de 2020. Ese día no comparecieron los testigos del Ministerio Público y la vista se recalendarizó para el 16 de marzo de 2020, como último día de términos. No obstante, ese día se decretó el cierre de los tribunales por motivo de la pandemia del COVID-19 y se citó para el 22 de junio de 2020, fecha en que se reanudaron los trabajos en los tribunales en algunas instancias.[16]

Llegada la fecha, el imputado compareció, pero la prueba de la Fiscalía no asistió. Ante ello, la querellada solicitó la desestimación por violación al derecho a juicio rápido. El Juez declaró no ha lugar la solicitud. La querellada presenció que otros abogados hicieron planteamientos similares, que también habían sido denegados.

---

[16] Todos los términos estaban paralizados mediante disposición administrativa hasta el 15 de julio de 2020.

La querellada escuchó la alocución que había hecho el abogado del caso anterior y, una vez el caso de ella fue llamado, inició una extensa argumentación con el Juez. En síntesis, manifestó que todas las solicitudes de desestimación por violación a juicio rápido iban a ser denegadas, debido a que por directrices de "la Administración de Tribunales, yo sé, que ya está decidida a declararla no ha lugar".[17] El Juez le clarificó a la querellada que no es la Oficina de Administración de los Tribunales la que declara ha lugar o no ha lugar las mociones, sino cada uno de los jueces y las juezas en las distintas Salas.

De igual manera, en reiteradas ocasiones le expresó al Juez que no asistiría a cualquier señalamiento que fuera antes del 15 de julio de 2020, porque pasaría lo mismo. ("No voy a venir el 8 de julio, Juez. No puedo venir el 8 de julio. Y yo creo que el tribunal seriamente debe sentarse a pensar esto, es más, eso es una injusticia de marca mayor. Yo jamás en mi vida pensé que yo lo iba a decir a este tribunal, que iba a dejar a mis hijas en mi casa, para venir a ver este espectáculo hoy").[18]

Tras ofrecerle varias fechas a la querellada, el Juez le indicó que el 22 de julio sería el último día de términos, a lo que la licenciada Gracia Marín respondió que eso era

---

[17] Íd., pág. 27.

[18] Íd., pág. 29.

una barbaridad. ("Que barbaridad, es una barbaridad").[19] El intercambio continuó hasta que el Juez le advirtió en dos (2) ocasiones que sus expresiones podían constituir desacato, pero que se las dejaría pasar.

En la vista disciplinaria, la querellada manifestó que era una época difícil y confusa por todo lo que estaba pasando por la pandemia, que su estado anímico no le estaba permitiendo enfocarse y que estaba atravesando por múltiples situaciones. Además, expuso que era la única abogada de la SAL que en ese momento estaba acudiendo al tribunal. Por último, señaló que compareció a la vista del 22 de julio de 2020 y el Juez desestimó el caso, debido a que la prueba de cargo tampoco compareció.

**IV**

Tras evaluar la conducta de la licenciada Gracia Marín a la luz de los cuatro (4) cargos imputados, el informe rendido por la Comisionada Especial y la normativa aplicable, podemos concluir que se demostró, mediante prueba clara, robusta y convincente, que la querellada incurrió en conducta contraria a los Cánones 9 y 38 del Código de Ética Profesional, *supra*. Veamos.

A.

Según consignamos, el Canon 9 consagra un principio básico en nuestro ordenamiento: "[l]a práctica de la abogacía exige hacia los tribunales constante respeto". *In*

---

[19] Íd., pág. 30.

*re Díaz Olivo I*, 203 DPR 517, 519-520 (2019); *In re Pagán*, *supra*. Además, requiere que "los abogados, cuando hayan de dirigirse al tribunal —aún para criticarle— lo hagan con respeto y deferencia". *In re Díaz Olivo I*, *supra*, pág. 520; *In re Crespo Enríquez*, *supra*, págs. 662-663. De esta manera, reconoce que "[p]ara reclamar derechos y solventar controversias no es menester lastimar la dignidad personal ni institucional de los miembros de la judicatura, como de ninguna otra persona". *In re Pagán*, *supra*.

Después de todo, que un abogado o una abogada defienda apasionada y diligentemente la causa de acción de su cliente no es incompatible con la exigencia de que, cuando vaya a dirigirse al tribunal, lo haga respetuosa y decorosamente. *In re Crespo Enríquez*, *supra*, pág. 663. Hemos resuelto que un abogado o una abogada le falta el respeto al tribunal cuando realiza imputaciones infundadas que "tienda[n] a degradar o a afectar la dignidad, honorabilidad e integridad de los tribunales o de sus funcionarios o que puedan debilitar o destruir el respeto a o la confianza pública en los mismos". *In re Andréu Ribas*, 81 DPR 90, 119 (1959).

De la prueba estipulada en este caso se desprende que, en varios de los incidentes, la querellada se dirigió a los jueces del Tribunal de Primera Instancia utilizando expresiones que excedieron el respeto y la deferencia requerida. Incluso, coincidimos con la apreciación de la Comisionada Especial de que, en algunas instancias, la estrategia de litigación de la querellada rayó en la

conducta desafiante y confrontativa. Esta conducta se manifestó mediante expresiones que cuestionaron la autoridad del tribunal y sus órdenes, comentarios despectivos sobre decisiones judiciales o cuestionamientos en tono airado sobre la manera en que los jueces condujeron los procedimientos, insinuaciones de irregularidades administrativas del Poder Judicial e, incluso, el uso de lenguaje mordaz e impropio. Todo ello, sin duda, la hizo desviarse de las normas de conducta profesional que contempla el Canon 9 de Ética Profesional, *supra.*

Coincidimos con la Comisionada Especial en que, la ofensa al respeto exigido al tribunal, no se produjo porque la licenciada Gracia Marín dejara de cumplir con un trámite procesal o consignara para el récord su desacuerdo con una determinación judicial ——pues ciertamente eso está dentro de lo permitido—, sino por la forma y el lenguaje que utilizó para expresar sus argumentos.[20] Es evidente que, en algunas instancias, la querellada no supo mantener el control de su temperamento, disgusto e inconformidad. Por ejemplo, calificar un dictamen de "disparate", "espectáculo" o "bárbaro" constituyó un insulto al proceso judicial y una

_____

[20] Si bien este Tribunal ha reconocido la crítica judicial sana y oportuna como "un medio necesario y efectivo para mantener a los jueces alertas y atentos al estricto cumplimiento de sus funciones" —*In re Crespo Enríquez*, *supra*, pág. 663—, claramente ello no significa que los profesionales del Derecho "tiene[n] licencia absoluta en el uso del lenguaje para poner en entredicho o mancillar la dignidad de los jueces". *In re Rochet Santoro*, *supra*, pág. 131 (citando a *In re López de Victoria I*, *supra,* pág. 8; *Pueblo v. Quiles Negrón et al.*, *supra*, pág. 620).

falta de respeto a la seriedad y solemnidad de los procedimientos y mancilló la imagen del adjudicador.

De igual manera, expresiones que sugieren que "el tribunal se satisface con cualquier cosa que le diga el fiscal", representó una imputación muy seria a la imparcialidad y a la independencia judicial del Juez o la Jueza que preside la Sala. Igual ocurrió con la manifestación en corte abierta que hizo la querellada al Juez Flores Sellés al intimar insistentemente que debía inhibirse *motu proprio* en los casos en que ella actuaba como abogada porque todos los dictámenes habían sido en contra del interés de sus representados. Ello, indudablemente, representó una crítica pública a la imparcialidad e independencia del adjudicador, sin ser ese el mecanismo que provee nuestro ordenamiento para tramitar una solicitud de recusación.

Ahora bien, los hechos revelan que, al dirigirse al tribunal en actitud retante, con lenguaje mordaz e impropio, así como con expresiones en tono confrontativo y en aparente menosprecio a la función e imparcialidad judicial, la licenciada Gracia Marín no solo infringió el Canon 9, *supra*, sino que tampoco exaltó el honor y la dignidad de la profesión legal. Por ende, su conducta provocó una situación de apariencia de conducta profesional impropia, contraria al Canon 38 del Código de Ética Profesional, *supra*.

La apariencia de conducta impropia "lacera la imagen, la confianza y el respeto que nuestra sociedad deposita en

la profesión y en las instituciones de la justicia". *In re Otero, Pacheco*, *supra*; *In re Guemárez Santiago*, *supra*. Las expresiones que hizo la querellada en sala pueden dar lugar a entender -a quien observa- que las partes pueden entrar en polémicas con los jueces y las juezas o hacer imputaciones infundadas basadas en la incomodidad que puedan sentir o en la inconformidad con el dictamen. Más aún, crear la peligrosa y falsa impresión de que están ante un tribunal parcializado. Por ejemplo, ello ocurrió sin duda alguna cuando criticó públicamente las directrices del Poder Judicial sobre la extensión de términos y las medidas administrativas incluidas en una *Resolución* por motivo de la pandemia de COVID-19, e insinuó que los magistrados tenían instrucciones específicas respecto al manejo y la adjudicación en sala de las solicitudes de desestimación.

No olvidemos que, en todos los incidentes, las salas se encontraban debidamente constituidas y contaban con la presencia de otros representantes legales, testigos, imputados y público en general, lo que agravó el impacto negativo del proceder de la licenciada Gracia Marín. Reiteramos que "[l]as discrepancias del abogado[a] con un dictamen judicial no es licencia para el lenguaje impropio e hiriente". *In re Pagán*, *supra*. Por el contrario, los profesionales del Derecho deben esforzarse en controlar su carácter y temperamento y, con ello, asegurarse que su reacción a los incidentes procesales y las controversias jurídicas se ventilen bajo un ámbito solemne, de decoro y

respeto, y no movidos por reacciones pasionales, emocionales o impulsivas que laceren la imagen y dignidad del proceso judicial.

A fin de cuentas, sin moderación en el lenguaje y el temperamento, los abogados, abogadas, fiscales, juezas y jueces no podemos funcionar. *In re Rivera García*, 147 DPR 746, 749 (1999). En todo caso, siempre debemos evitar la grosería, la gritería, el empleo de imputaciones infundadas y, sobre todo, las alegaciones contrarias a la verdad o desprovistas de una razonable presunción de exactitud. *In re Cardona Álvarez, supra*.

Así las cosas, determinamos que la conducta y las manifestaciones de la licenciada Gracia Marín no fueron expresiones válidas ni veraces y, además, transgredieron la dignidad del tribunal. Cuando un profesional del Derecho realiza alegaciones o expresiones difamatorias e irrespetuosas dirigidas al tribunal, mancilla la dignidad de todos los funcionarios a cargo de la loable tarea de impartir justicia. Véase *In re Crespo Enríquez, supra*, pág. 657. El hecho de que sus intervenciones estuviesen motivadas por la vehemente defensa de sus clientes, no es justificación para incurrir en expresiones que menoscaben la imagen de la judicatura.

Reiteramos que si en algo se equivoca el juez o la jueza que preside los procedimientos, el remedio que tiene la persona que ejerce la abogacía no es injuriarlo o utilizar un lenguaje soez o desafiante, sino solicitar que

reconsidere o recurrir a un tribunal de superior jerarquía para, de esta forma, no infringir los principios básicos de deferencia y consideración hacia los tribunales.

B.

Por otro lado, en atención a los Cargos I y III, coincidimos con la Comisionada Especial en que en este caso no surgió prueba clara, robusta y convincente que nos lleve a concluir que la licenciada Gracia Marín falló en proveerle una representación legal adecuada a sus clientes y, con ello, infringiera el Canon 1 de Ética Profesional, *supra*. Similarmente, tampoco surge de la prueba estipulada que la querellada no actuara con celo, cuidado y responsabilidad en la tramitación de los casos de sus clientes y que, por ello, incumpliera con el Canon 18 de Ética Profesional, *supra*.

Nada de la conducta evaluada en los distintos incidentes tan siquiera sugiere que la querellada desatendió su responsabilidad de prepararse en la defensa de sus clientes o dejara de defender diligentemente sus intereses. De hecho, las expresiones de la licenciada, aunque no fueron las más adecuadas, evidencian que su objetivo era obtener resultados favorables para sus clientes, lo que refleja que litigó con firmeza en su defensa. Es decir, no hay prueba de que el proceder hacia sus clientes haya sido con indiferencia, desidia, despreocupación o inacción.

Si bien, como hemos indicado, en ciertas instancias la licenciada Gracia Marín utilizó un lenguaje y un tono

desacertado e inadecuado hacia el tribunal, esto por sí solo no constituyó una falta de diligencia, de competencia hacia sus clientes ni desconocimiento de la materia, todos estos escenarios protegidos por los Cánones 1 y 18.

Similarmente, y como pudimos observar, en varios episodios, a pesar de haber verbalizado que no permanecería en la sala o que no comparecería a señalamientos posteriores, el récord demostró que la querellada continuó participando activamente de los procedimientos y que los intereses de sus clientes no se quedaron desprotegidos.

En ese sentido, y como vimos, aunque la conducta de la licenciada Gracia Marín vulneró los Cánones 9 y 38 del Código de Ética Profesional, *supra*, no contamos con evidencia suficiente para concluir que los hechos constituyeran, además, una violación en sí misma a los Cánones 1 y 18, como sostiene el Procurador General.

Así las cosas, nos resta determinar la sanción disciplinaria que en derecho procede.

C.

Al disciplinar a los abogados y las abogadas que han infringido el Código de Ética Profesional, este Tribunal ha considerado varios factores para determinar la sanción correspondiente. Específicamente, hemos considerado como criterios o factores relevantes: (1) la reputación de la persona que ejerce la abogacía en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa

frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente o la clienta; (8) si demostró aceptación o arrepentimiento sincero por la conducta imputada; y (9) otros atenuantes o agravantes que surjan de los hechos. *In re Pérez Rojas*, *supra*; *In re Carbone Rosario*, *supra*; *In re Roldán González*, 195 DPR 414, 425 (2016).

De los hechos determinados se desprende que la licenciada Gracia Marín fue admitida a ejercer la profesión de la abogacía desde hace veintinueve (29) años. De estos, veintiocho (28) años los ha dedicado a representar a personas indigentes en asuntos de naturaleza penal en salas contenciosas, la mayoría de las cuales se encontraban confinadas al momento de ser representadas. Desde que la querellada inició labores en la SAL en el año 1997, el salario devengado por su trabajo como abogada litigante ha constituido su única fuente de ingreso. La querellada mantiene la notaría activa, pero solo la ha ejercido y la puede ejercer exclusivamente para asuntos de los clientes de la SAL. En toda su trayectoria profesional, no había sido disciplinada y no se conocen quejas anteriores de clientes ni referidos por causa de su desempeño como abogada. Tampoco había enfrentado situaciones similares a la que es objeto de la presente querella.

Debemos tener presente que, al momento en que se refirió su conducta a nuestra atención, la querellada llevaba veintitrés (23) años prestando sus servicios

ininterrumpidamente en la SAL. Además, el último de los incidentes reseñados en la *Queja*, ocurrido en una vista preliminar en alzada el 22 de junio de 2020, coincidió con un periodo pandémico que se vivía bajo tensión y durante el cual se estaban brindando directrices administrativas a nivel institucional sobre la marcha. Para la fecha de ese último incidente, los tribunales reanudaron la operación bajo medidas especiales por la situación mundial que se vivía.

Por otro lado, surge del expediente que, desde que se refirió la conducta de la querellada a nuestra atención, no se han instado referidos o quejas ulteriores en su contra. De igual forma, se desprende de autos que la licenciada Gracia Marín se comprometió a que este tipo de incidentes no volverá a ocurrir. De hecho, aseveró que modificó su conducta y que se alejó de la impulsividad que le provoca la práctica criminal. Por ello, expresó que decidió dejar los litigios en sala como una medida auto correctiva, evitando con ello tener que postular ante los tribunales, y que desde enero de 2025 se dedica a la práctica apelativa en la SAL, centrada en la preparación de escritos en procesos de revisión judicial.

Similarmente, ante la Comisionada Especial, la licenciada Gracia Marín afirmó bajo juramento que: (1) desde los incidentes ocurridos, ha experimentado una etapa de aprendizaje, evolución y reflexión; (2) ha modificado su forma de expresarse; (3) no ha tenido inconvenientes

similares a los de la *Querella*; (4) ha continuado el ejercicio de la representación de personas indigentes; (5) para el momento de algunos incidentes objetos de la *Querella*, realizó extensos sacrificios personales para ofrecer una representación competente de sus clientes; y (6) también enfrentó las dificultades de la carga de trabajo de la SAL, así como las secuelas de los daños a la planta física de esa institución.

De esta forma, destacamos además que, desde su primera comparecencia en este proceso disciplinario y en todas las ulteriores -incluso cuando brindó su testimonio en la vista evidenciaria ante la Comisionada Especial-, la licenciada Gracia Marín mostró su arrepentimiento y solicitó ser excusada por la manera en la que manifestó su frustración. Reconoció explícitamente que el lenguaje utilizado fue desacertado e inapropiado y que no manejó correctamente sus emociones. Su arrepentimiento nos parece genuino y sus disculpas nos parecen sinceras.

Así las cosas, resolvemos que todos estos elementos constituyen atenuantes a considerarse al momento de imponer a la querellada la sanción disciplinaria por la conducta desplegada y las violaciones éticas incurridas. Asimismo, enfatizamos que el comportamiento de la licenciada Gracia Marín no conllevó que se causara un perjuicio directo a los clientes ni a sus casos, pues en cada uno de los procesos antes reseñados veló por los intereses de los imputados o acusados, así como por sus derechos constitucionales.

Pesa además en nuestro ánimo que las declaraciones juradas de los cinco (5) testigos, presentadas como prueba de su reputación, reflejan que la licenciada Gracia Marín goza de una reconocida y positiva reputación profesional dentro de la comunidad jurídica. Cuatro (4) de estas declaraciones provienen de abogados y abogadas que han litigado o laborado junto a ella en el foro judicial, mientras que la quinta corresponde a un juez retirado ante quien la querellada ejerció su función litigante. Sin duda, este tipo de prueba, estipulada por las partes, proviene de fuentes con conocimiento directo de su desempeño profesional durante sus veintiocho (28) años como abogada de la SAL y posee un alto valor atenuante, ya que, al no ser refutada, es indicativa de que la conducta observada en los incidentes, no obedeció a un patrón habitual a lo largo de su extensa carrera como litigante, sino que respondió a circunstancias excepcionales.

**V**

Por los fundamentos que anteceden, resolvemos que se presentó prueba clara, robusta y convincente que acreditó que la licenciada Gracia Marín se apartó del modelo de corrección y respeto que debe guiar la actuación de todos los profesionales del Derecho. Con este proceder, menoscabó el honor y la dignidad de la profesión y debilitó la confianza pública en la administración de la justicia infringiendo los Cánones 9 y 38 del Código de Ética Profesional, *supra*.

Al considerar las circunstancias atenuantes previamente reseñadas, en particular que se trata de la primera queja y querella en contra de la letrada en su experimentada carrera como representante legal de personas indigentes, procede únicamente que censuremos enérgicamente sus expresiones y la apercibamos sobre futuras infracciones. Se le advierte que en todo momento en su desempeño profesional debe mantener un estilo de litigación respetuoso, profesional y ecuánime que propenda al justo y buen funcionamiento de nuestro sistema de justicia. Se ordena, a su vez, el archivo de la *Querella*.

Notifíquese esta Opinión *Per Curiam* y *Sentencia* a la Lcda. Celimar Gracia Marín al correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico.

Se dictará Sentencia en conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Celimar Gracia Marín          CP-2022-0002
     (TS-11,638)

SENTENCIA

En San Juan, Puerto Rico, a 14 de enero de 2026.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente Sentencia se resuelve que se presentó prueba clara, robusta y convincente que acreditó que la licenciada Gracia Marín se apartó del modelo de corrección y respeto que debe guiar la actuación de todos los profesionales del Derecho. Con este proceder, menoscabó el honor y la dignidad de la profesión y debilitó la confianza pública en la administración de la justicia infringiendo los Cánones 9 y 38 del Código de Ética Profesional, *supra*.

Al considerar las circunstancias atenuantes previamente reseñadas, en particular que se trata de la primera queja y querella en contra de la letrada en su experimentada carrera como representante legal de personas indigentes, procede únicamente se censuren enérgicamente sus expresiones y se le aperciba sobre futuras infracciones. Se le advierte que en todo momento en su desempeño profesional debe mantener un estilo de litigación respetuoso, profesional y ecuánime que propenda al justo y buen funcionamiento de nuestro sistema de justicia. Se ordena, a su vez, el archivo de la *Querella*.

Notifíquese esta Opinión *Per Curiam* y *Sentencia* a la Lcda. Celimar Gracia Marín al correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco **disiente** y emite la expresión siguiente, a la cual se unen los Jueces Asociados señores Feliberti Cintrón y Candelario López:

"Estoy consciente del esfuerzo que emplean muchos abogados y abogadas —tanto en el ámbito civil como criminal— para defender los intereses de personas con escasos recursos. Sin embargo, **una carrera dedicada a la representación legal de personas indigentes no brinda acceso a transgredir los deberes éticos que deben observar los profesionales del derecho**. El Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX, le exige a todos los letrados que se conduzcan con el mayor respeto hacia los tribunales, independientemente de lo lucrativa que sea la práctica legal que desempeñen.

Ciertamente, los foros judiciales no están exentos de observaciones o críticas por parte de los abogados, máxime cuando son estos los que acuden día a día a los tribunales a defender las causas que representan y, por ende, conocen de primera mano las áreas en las que se pudieran tomar medidas correctivas para mejorar los servicios que el Poder Judicial provee. Así lo he reconocido en el pasado al destacar que las acciones que generan desconfianza y reflejan irregularidades en los procesos judiciales deben ser rechazadas. Véase, *In re Díaz Olivo I*, 203 DPR 517, 525 (2019) (Resolución). Empero, los señalamientos deben canalizarse a través de los medios apropiados y no con insultos hacia nuestros jueces y juezas.

En este caso, la Lcda. Celimar Gracia Marín desafió <u>en varias instancias</u> a los magistrados que atendían los casos penales en que esta intervenía. So pretexto de la carga de trabajo que poseía, y de la pandemia ocasionada por el COVID-19, la letrada atacó de manera <u>reiterada</u> e injustificada la dignidad y la honra del tribunal. Al así hacerlo, permitió que su descontento y frustración superaran el deber que tenía de ejercer la práctica legal de manera cortés y respetuosa.

En vista de ello, y tomando en consideración algunas medidas disciplinarias impuestas en el pasado por conductas comparables a la presente, **entiendo que lo apropiado sería suspender a la licenciada Gracia Marín de la práctica legal por un término de tres (3) meses**. Véase, *In re Torres Torres*, 214 DPR 713 (2024); *In re López de Victoria I*, 163 DPR 1 (2004); *In re Vargas Soto*, 127 DPR 576 (1990); *In re Martínez, Jr.*, 108 DPR 158 (1978); *In re Pagán Hernández*, 105 DPR 796 (1977). No obstante, debido a que una Mayoría optó

por limitar la sanción a una censura enérgica, **disiento.**"

                        Javier O. Sepúlveda Rodríguez
                        Secretario del Tribunal Supremo